693 So.2d 57 (1997)
Trod Okeka BUGGS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1039.
District Court of Appeal of Florida, Fifth District.
April 4, 1997.
Rehearing Denied May 15, 1997.
Steven G. Mason of Law Office of Steven G. Mason, Orlando, for Appellant.
*58 Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Childs, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, Judge.
Trod Okeka Buggs was convicted of burglary of a dwelling with an assault, three counts of sexual battery on one victim, and the commission of a lewd and lascivious act in the presence of a minor. He appeals his conviction; we affirm.
Of the points raised by Mr. Buggs, two warrant discussion.
Mr. Buggs contends that on the same day the information was filed in this cause, the State sought and obtained an order permitting it to seize hairs and blood from him. He reasons, therefore, that since he was in custody an evidentiary hearing with him present was required before such order could be properly entered. For this proposition, he relies on Jones v. State, 343 So.2d 921 (Fla. 3rd DCA 1977). Although it is true that in Jones an adversarial hearing was conducted, the court does not speak to the issue of whether a hearing is required. Further, in Jones, the hearing was held long after Jones was arrested and was appointed counsel. Such are not the facts in this case.
Here, the record reflects that the information and the affidavit of probable cause were both filed on January 26. The challenged search warrant was entered ex parte the morning of January 27 and executed on Mr. Buggs immediately after he was taken into custody at around 11:30 a.m. on January 27. Mr. Buggs was not finally "booked in" until 6:00 p.m. on that date and did not make his first appearance until the following morning.
This search and seizure issue is controlled by Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which held that since the extraction of blood [and hair] did not involve "testimonial compulsion" or "enforced communication," one's Fifth Amendment rights are not implicated. Therefore, since defendant had no privilege to assert, he had no right to have counsel assert it. Buggs, however, did have a right not to be subjected to an intrusive body search unless and until sufficient probable cause was shown to justify the search warrant. We find such probable cause was shown.
The affidavit submitted on behalf of the search warrant alleged the following:
The victim described the assailant as a black male, approximately 6'2" tall, and approximately 30 to 40 years of age, wearing tan pants and a reddish-orange or drab brown T-shirt, having a distinctly slow pattern of speech. The affiant talked to friends of Trod Buggs who stated that about three hours before the crimes they saw Buggs about half a mile from the victim's home, by himself, wearing a red or reddish-orange T-shirt and tan pants. Those who know Buggs have stated that Buggs habitually speaks slowly. Buggs is a black male whose age and height match the victim's description of her rapist. Also, the victim stated that Buggs had rough hands; at the time of the offense he had been working with concrete blocks in construction work. Finally, the victim has viewed a photo lineup including a picture of [Buggs] and has positively identified him as the burglar and rapist.
Certainly the affidavit, on its face, states probable cause to justify the warrant. But Mr. Buggs claims that the affidavit misrepresents the result of the lineup and fails to include essential evidence that would have defeated the warrant. Instead of a "positive" identification, says Buggs, the victim merely stated that he "looked like" the perpetrator. Further, according to Buggs, the police developed evidence that other possible suspects were seen in the area but did not so advise the judge who authorized the search warrant. Finally, Buggs argues, the officers should have advised the judge that Buggs' fingerprints were not found at the scene of the crime.
Applying the test mentioned in Sotolongo v. State, 530 So.2d 514 (Fla. 2d DCA 1988), that in considering omissions from an affidavit justifying a search warrant, the court should consider the affidavit as though it included the omitted information in determining whether the warrant is based on *59 probable cause, we find that even if the affidavit had alleged that Buggs' fingerprints were not found, that the victim merely stated that Buggs "looked like" the assailant, and that other possible suspects were seen in the vicinity, still the affidavit would have stated probable cause justifying the warrant.
Buggs' next point is that he should have received a judgment of acquittal on the charge of committing a lewd and lascivious act in the presence of a minor since the State offered no proof that the minor was aware that the sexual battery was taking place. Although the minor was not called to the stand, the record establishes that she was the sister of the victim, sleeping on the same waterbed as the victim, was screaming and crying with the victim as the assailant said words to the effect, "shut up or I'll kill you," and held the victim's hand throughout the sexual battery. The supreme court stated the rule in State v. Werner, 609 So.2d 585, 587 (Fla.1992), that the word "presence" means that "while the child need not be able to articulate or even comprehend what the offender is doing, the child must see or sense that a lewd or lascivious act is taking place for a violation to occur." We believe the evidence in this case meets that standard.
AFFIRMED.
W. SHARP and GRIFFIN, JJ., concur.