708 So.2d 929 (1998)
John DOE, et al., Appellants,
v.
Sandra MORTHAM, etc., Appellee.
No. 88677.
Supreme Court of Florida.
March 19, 1998.
*930 Philip G. Butler, Jr., of Butler & Brown, P.A., West Palm Beach, for Appellants.
Robert A. Butterworth, Attorney General, and George Waas, Assistant Attorney General, Tallahassee, for Appellee.
SHAW, Justice.
We have on appeal an order of the trial court declaring several Florida statutes facially constitutional. The district court certified that the order involves issues of great public importance requiring immediate resolution by this Court.[1] We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. We affirm as explained below.
John and Jane Doe filed a complaint in circuit court in February 1996 seeking a declaratory judgment that sections 106.071,[2] 106.143,[3] and 106.144,[4] Florida Statutes (1995), governing campaign advertising and financing, are unconstitutional. Although the Does had not been charged with any violations under the statutes, they nevertheless asserted that the statutes are overbroad and infringe on their First Amendment right to *931 engage in anonymous political advocacy. The trial court denied the complaint and the district court certified the issue to this Court. The Does argue inter alia that the reporting and identification requirements of the statutes are overbroad and violate both Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and McIntyre v. Ohio Elections Commission, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). We disagree.

I. OVERBREADTH
The basic contours of First Amendment overbreadth doctrine were set out in Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), wherein the United States Supreme Court upheld against facial attack an Oklahoma statute that barred state employees from participating in certain political activities:
It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. As a corollary, the Court has altered its traditional rules of standing to permitin the First Amendment area"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.
....
The consequence of our departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. ...
....
It remains a "matter of no little difficulty" to determine when a law may properly be held void on its face and when "such summary action" is inappropriate. But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function [is a] limited [one].... To put the matter another way... we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that [the Oklahoma statute] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.
Id. at 611-616, 93 S.Ct. at 2915-2918 (citations and footnote omitted) (emphasis added). See also Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987) ("A statute may be invalidated on its face, however, only if the overbreadth is `substantial.'").[5]
Applying the above law to the present case, we conclude that Florida sections 106.071, 106.143, and 106.144 are not substantially overbroad and that any infirmity can be cured by the narrowing construction given below. The statutes are not censorial, i.e., they "are not directed at particular groups or viewpoints," but rather seek "to regulate political activity in an even-handed and neutral manner." 413 U.S. at 616, 93 S.Ct at 2918. As the federal Court noted, "such statutes have in the past been subject to less exacting overbreadth scrutiny." Id. The Florida statutes are grounded in valid *932 state concerns[6] and include unquestionably lawful provisions within their scope: They impose reporting and identification requirements on the vast array of paid political advertisements promulgated in conjunction with formal campaigns and party apparatuses; and they require that the anonymous "Paid political advertisement" designation be placed on campaign advertisements. When compared to the statutes' plainly legitimate sweep, any arguable infirmity left uncured by our construction today is insubstantial and can be dealt with on an "as applied" basis.

II. BUCKLEY v. VALEO

The United States Supreme Court in Buckley conducted a detailed analysis of the Federal Election Campaign Act (the federal Act).[7] Section 434(e) of the federal Act provides in part:
Every person (other than a political committee or candidate) who makes contributions or expenditures, other than by contribution to a political committee or candidate, in an aggregate amount in excess of $100 within a calendar year shall file with the Commission a statement containing the information required by this section.
Buckley, 424 U.S. at 160, 96 S.Ct. at 701 (emphasis added). The term "expenditure" is defined in section 431(f) as follows:
(f) "expenditure"
(1) means a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made for the purpose of
(A) influencing the nomination for election, or the election, of any person to Federal office, or to the office of presidential and vice presidential elector; or
(B) influencing the results of a primary election held for the selection of delegates to a national nominating convention of a political party or for the expression of a preference for the nomination of persons for election to the office of President of the United States....
Buckley, 424 U.S. at 147-48, 96 S.Ct. at 695 (emphasis added).
The federal Court was concerned that the phrase "for the purpose of ... influencing" in section 431(f) was vague in that it could be construed to embrace not just funds spent in the advocacy of a specific candidate, but also funds spent in the discussion of political issues and candidates in general. See Buckley, 424 U.S. at 39-44, 76-80, 96 S.Ct. at 644-47, 662-63. Because such a reading would hinder the free exchange of ideas, the federal Court limited "expenditure" in section 434(e) to reach "only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate." Id. at 80, 96 S.Ct. at 664 (footnote omitted).
In the present case, to the extent that section 106.071 uses the word "issue" and section 106.144 incorporates the phrase "which endorses or opposes any referendum," we find that none of this language is fatally vague. The word "issue" can reasonably be read as pertaining to any specific referendum issue, and the phrase "which endorses or opposes any referendum" is clear on its face. The federal Court in Buckley limited the reach of section 434(e) to embrace only communications concerning "a clearly identified candidate," as opposed to a referendum issue, not because restrictions on issues are improper per se, but rather because section 434(e) addresses "expenditures" and the definition of "expenditure" in section 431(f) by its very terms applies only to political candidates. The federal Court later explained:
The Federal Election Campaign Act of 1971, at issue in Buckley, regulates only candidate elections, not referenda or other issue-based ballot measures; and we construed "independent expenditures" to *933 mean only those expenditures that "expressly advocate the election or defeat of a clearly identified candidate."
McIntyre, 514 U.S. at 356, 115 S.Ct. at 1523. To limit Florida sections 106.071 and 106.144 to "political candidates" simply because federal sections 434(e) and 431(f) are so limited would be illogical where that criterion is written into the latter statutes and absent from the former.
The only arguably vague language in the Florida sections is the phrase "with respect to any candidate or issue" in section 106.071. This language suffers from the same infirmity as that in Buckley in that it can be read as applying to communications that merely discuss in general terms political issues and candidates. This vagueness, however, can be cured simply by reading the phrase to reach only those funds used for communications that expressly advocate the election or defeat of a clearly identified candidate or referendum issue. See Buckley, 424 U.S. at 80, 96 S.Ct. at 664. We so read the statute.

III. McINTYRE v. OHIO ELECTIONS COMMISSION

The United States Supreme Court in McIntyre struck down an Ohio statute that was used to convict and fine a mother, Margaret McIntyre, who was standing outside a public meeting at a middle school with her son handing out leafletswhich she had composed on her home computeropposing a school tax levy. The leaflets were signed "CONCERNED PARENTS AND TAX PAYERS," rather than with McIntyre's name as required by the statute, which provided in part:
No person shall write, print, post, or distribute, or cause to be written, printed, posted, or distributed, a notice, placard, dodger, advertisement, sample ballot, or any other form of general publication which is designed to promote the nomination or election or defeat of a candidate, or to promote the adoption or defeat of any issue, or to influence the voters in any election ... unless there appears on such form of publication in a conspicuous place or is contained within said statement the name and residence or business address of the chairman, treasurer, or secretary of the organization issuing the same, or the person who issues, makes, or is responsible therefor. The disclaimer "paid political advertisement" is not sufficient to meet the requirements of this division.
McIntyre, 514 U.S. at 338 n. 3, 115 S.Ct. at 1514 n.3. The United States Supreme Court, after pointing out that McIntyre had acted independently[8] and had paid for the handbills with her "own modest resources,"[9] ruled that such "independent communications by an individual" embodied the essence of the First Amendment and could not be so inhibited: "No form of speech is entitled to greater constitutional protection than Mrs. McIntyre's." Id. at 347, 115 S.Ct. at 1519.
The federal Court in McIntyre was constrained to strike the offending Ohio statute in its entiretyrather than giving the statute a narrowing constructionfor two reasons. First, under our federal system of government, the United States Supreme Court is reluctant to redraft a state statute once the state's highest court has given that statute a definitive construction.[10] And second, under *934 the express wording of the Ohio statute noted above, McIntyre's conduct went to the very heart of the statute. The federal Court could not rewrite the statute without directly contravening the plain wording of the statute. Neither of these concerns are present in the instant case.
First, unlike the United States Supreme Court, this Court is eminently qualified to give Florida statutes a narrowing construction to comply with our state and federal constitutions.[11] In fact, it is our duty to save Florida statutes from the constitutional dustbin whenever possible.[12] We have done so regularly and with statutes that required far more rewriting than the present sections.[13] Our reading of the Florida statutes today is entirely consonant with McIntyre, wherein the federal Court noted: "We recognize that a State's enforcement interest might justify a more limited identification requirement [than that of the Ohio statute]." 514 U.S. at 353, 115 S.Ct. at 1522.
Second, unlike the Ohio statute in McIntyre, the identification requirement in Florida section 106.143(1)(b)[14] can reasonably be read as not applying to the type of personal expression engaged in by McIntyre, and we so read it. We hold that section 106.143(1)(b) is inapplicable to the personal pamphleteering of "individuals acting independently and using only their own modest resources." 514 U.S. at 351, 115 S.Ct. at 1521. As for section 106.071(1), only to the extent that the last sentence in this section requires identification of independent advertisements made by individuals does it run afoul of the First Amendment.[15] This offending language is minor and easily severable,[16] *935 and we order it stricken.[17] The generic requirement in both sections 106.071 and 106.143 that all communications be marked with the phrase "paid political advertisement" in no way violates the anonymity concerns underlying McIntyre.[18]

IV. CONCLUSION
Based on the foregoing, the Does overbreadth challenge to sections 106.071, 106.143, and 106.144 must fail. We see no reason to discard these statutes in toto because the rights of some Florida citizens at some point in time might arguably be chilled in some way. Hobbling the will of the peopleas the Does ask us to dobased on rank conjecture and speculation flies in the face of the constitutional underpinnings of the overbreadth doctrine. The statutes are not substantially overbroad and, therefore, are not facially unconstitutional. Any infirmity that might be alleged in the future can be addressed by the courts of this state on an "as applied" basis.[19]
We affirm the trial court's order upholding the facial constitutionality of sections 106.071, 106.143, and 106.144, Florida Statutes (1995), as explained herein.
It is so ordered.
KOGAN, C.J., and OVERTON, WELLS and ANSTEAD, JJ., concur.
HARDING, J., dissents with an opinion in which GRIMES, Senior Justice, concurs.
HARDING, Justice, dissenting.
I respectfully dissent from the majority. I believe that the statutes must be more narrowly construed so as not to violate the First Amendment rights to freedom of speech and freedom of association.
Section 106.071 requires any person who makes an independent expenditure with respect to any candidate or issue in an aggregate of more than $100 to file reports with the Division of Elections disclosing the identity and other information relating to the individual making the expenditure. Section 106.071 further provides that any political advertisement paid for by an independent expenditure must state that it is a paid political advertisement paid for independently and identify the person or group paying for the advertisement. Section 106.143 requires that any political advertisement or campaign literature be marked as "paid political advertisement" and identify the individual or group sponsoring the advertisement and who paid for the advertisement. As defined in chapter 106, a political advertisement is a paid expression in any communications media which supports or opposes any candidate, elected public official, or issue. § 106.011(17), Fla. Stat. (1995). Section 106.144 requires groups or organizations that intend to either endorse or oppose a candidate or referendum issue through political advertisement to file a report with the Division of Elections disclosing certain information about the group.
The activities regulated by these statutes constitute "political expression `at the core of our electoral process and the First Amendment freedoms.'" State v. Dodd, 561 So.2d 263, 264 (Fla.1990) (quoting Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 657, 110 S.Ct. 1391, 1396, 108 L.Ed.2d 652 (1990)). Thus, the statutes are subject to "strict scrutiny" and must be narrowly tailored to serve a compelling state interest. Id. at 264-65.
*936 As this Court explained in Falzone v. State, 500 So.2d 1337, 1338 (Fla.1987), there is a compelling state interest in informing the electorate as to who is involved in raising and spending money for elections. See also Let's Help Florida v. McCrary, 621 F.2d 195, 200 (5th Cir.1980) ("[P]romoting disclosure of campaign contributors is an important state interest ...."), aff'd sub nom. Firestone v. Let's Help Florida, 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). However, the United States Supreme Court has also recognized clear distinctions between contributions and independent expenditures. See Federal Election Comm'n v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 259-60, 107 S.Ct. 616, 629, 93 L.Ed.2d 539 (1986) ("We have consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending."); Buckley v. Valeo, 424 U.S. 1, 20-22, 96 S.Ct. 612, 635-636, 46 L.Ed.2d 659 (1976). Thus, to the extent that the statutes at issue place restrictions upon independent expenditures, I believe that they must withstand more exacting scrutiny. The majority does not even address any possible distinction between the statutes' regulation of independent expenditures and their regulation of political contributions.
The majority apparently concludes that the statutes are subject to less exacting scrutiny because they "are not censorial, i.e., they `are not directed at particular groups or viewpoints,' but rather `seek to regulate political activity in an even-handed and neutral manner.' " Majority op. at 931. However, as the United States Supreme Court noted in McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 345-46, 115 S.Ct. 1511, 1518, 131 L.Ed.2d 426 (1995), while a similar Ohio provision applied "evenhandedly to advocates of differing viewpoints, it [was] a direct regulation of the content of speech," and "`involve[d] a limitation on political expression subject to exacting scrutiny.'" (footnote omitted) (quoting Meyer v. Grant, 486 U.S. 414, 420, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988)). Thus, the fact that the statutes may evenhandedly burden all speakers who wish to engage in political speech is not dispositive. Rather, the significant fact is that "only those publications containing speech designed to influence voters in an election need bear the required markings." Id. at 345, 115 S.Ct. at 1518.
I agree with the majority that the statutes at issue are "not substantially overbroad" and thus need not be struck down in their entirety. Majority op. at 931. An otherwise unconstitutionally overbroad statute can be saved by a narrowing construction by a state court. See, e.g., Osborne v. Ohio, 495 U.S. 103, 115-21, 110 S.Ct. 1691, 1699-1702, 109 L.Ed.2d 98 (1990) (finding it permissible for Ohio Supreme Court to rely on narrowed construction of child pornography statute when evaluating overbreadth challenge). However, I believe that the majority's "narrowing" construction is so broad that the statutes will still prohibit "`a substantial amount of constitutionally protected conduct.' " Bouters v. State, 659 So.2d 235, 237 (Fla.) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)), cert. denied, 516 U.S. 894, 116 S.Ct. 245, 133 L.E.2d 171 (1995).
I believe the majority reaches this result from too narrowly reading the United States Supreme Court's opinions in Buckley and McIntyre. The majority concludes that is "illogical" to interpret Florida sections 106.071 and 106.144 as imposing restrictions on expenditures relating to referendum issues because the Buckley court addressed a federal statute that "by its very terms applies only to political candidates." Majority op. at 932. However, the majority ignores the fact that the Buckley court was concerned that too broad a definition of expenditures had the impermissible "potential for encompassing both issue discussion and advocacy of a political result." 424 U.S. at 79, 96 S.Ct. at 663. In order not to "reach groups engaged purely in issue discussion," the Supreme Court interpreted the term "political committee" as encompassing only those "organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." Id.
Similarly, while the majority reads McIntyre as only applying to personal pamphleteering *937 by "individuals acting independently and using only their own modest resources," 514 U.S. at 351, 115 S.Ct. at 1521, the Supreme Court characterized the case as involving "core political speech." Id. at 347, 115 S.Ct. at 1519. "Indeed, the speech in which Mrs. McIntyre engagedhanding out leaflets in the advocacy of a politically controversial viewpointis the essence of First Amendment expression." Id.
The majority seems to miss the forest while wandering through the trees. I read both Buckley and McIntyre as articulating far-reaching principles of our First Amendment rights.
In Buckley, the Supreme Court addressed the constitutionality of certain provisions of the Federal Election Campaign Act, including provisions requiring every individual or group making contributions or expenditures over $100 to file a statement with the Federal Elections Commission. 424 U.S. at 63-64, 96 S.Ct. at 655-656. The Supreme Court noted that such "compelled disclosure has the potential for substantially infringing the exercise of First Amendment rights." Id. at 66, 96 S.Ct. at 657. While the Supreme Court found that "[t]he disclosure requirements, as a general matter, directly serve substantial governmental interests,"[20]id. at 68, 96 S.Ct. at 658, the Court narrowly limited the independent reporting requirements of individuals and groups to "those situations where the information sought has a substantial connection with the governmental interests sought to be advanced." Id. at 81, 96 S.Ct. at 664. Specifically, the Court concluded that individuals and groups that are not candidates or political committees are only subject to the disclosure requirements when they make expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate. Id. at 80, 96 S.Ct. at 664. As so construed, the Court concluded that the independent reporting and disclosure requirements were a "reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view." Id. at 82, 96 S.Ct. at 664.
In a challenge to similar reporting and disclosure provisions in Virginia's statutes, a federal district court concluded that the Virginia Supreme Court should be afforded the opportunity to narrowly construe the provisions consistent with Buckley in order to eliminate constitutional problems. Virginia Soc'y for Human Life, Inc. v. Caldwell, 906 F.Supp. 1071, 1075 (W.D.Va.1995). Accordingly, the district court entered a preliminary injunction enjoining the enforcement of the statutes against the plaintiffs, except as to contributions and expenditures for express advocacy of the election or defeat of a specific candidate. Id. at 1078.
I believe a similar narrowing construction of the reporting and disclosure requirements of sections 106.071 and 106.144 is necessary to save them from constitutional infirmity. In enacting these statutes, the legislature specifically declared the provisions of the acts to be severable. See ch. 77-175, § 65, at 1074, Laws of Fla. (creating § 106.071 and amending § 106.144); ch. 73-128, § 33, at 238, Laws of Fla. (creating § 104.373, which was subsequently transferred to § 106.144). Where an act is severable, the invalidity of any provision or the invalidity of its application to any person or circumstance "shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application." Id. Thus, I would delete the word "issue" from section 106.071(1) and construe the reporting and disclosure requirements in section 106.071 as only applying to individuals and groups who make independent expenditures in the aggregate of $100 with respect to any candidate for public office. Similarly, I would delete the words "which endorses or opposes any referendum" from section 106.144 and construe *938 the reporting and disclosure requirements of section 106.144 as only applying to groups or organizations which intend to endorse or oppose a candidate for public office by means of political advertisements.
The section 106.071 disclosure requirement relating to political advertisements paid for by an independent expenditure poses a different problem. As discussed below in regard to section 106.143, I conclude that this requirement is unconstitutional and would strike it from the statute.
Section 106.143(1) requires that all political advertisements and campaign literature be marked as paid political advertisement, identify the person or organization sponsoring the advertisement, and identify the person or organization paying for the advertisement, if different from the source of sponsorship. The Does cite the United States Supreme Court's decision in McIntyre v. Ohio Elections Commission, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), as evidence that the statute impermissibly impinges upon constitutionally protected First Amendment rights.
In McIntyre, the Supreme Court concluded that an Ohio statute prohibiting the distribution of any anonymous campaign literature violated the First Amendment. Margaret McIntyre was fined $100 for violating the Ohio statute when she distributed anonymous leaflets expressing her opposition to a proposed school tax levy. Id. at 337-338, 115 S.Ct. at 1514.
McIntyre involved an as-applied challenge, that is, whether the statute impermissibly violated McIntyre's First Amendment rights to distribute anonymous leaflets produced with her own resources. In the instant case, the Does challenge the facial validity of the Florida statute, arguing that it is overbroad. Notably, in McIntyre the Supreme Court not only found the Ohio statute violative of McIntyre's First Amendment rights, but also determined that it could not uphold "Ohio's open-ended provision." Id. at 356, 115 S.Ct. at 1524.
In McIntyre, the Supreme Court recognized that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." Id. at 342, 115 S.Ct. at 1516. The State of Ohio argued that its ban on anonymous political speech served two important and legitimate state interests: (1) preventing fraudulent and libelous statements; and (2) providing the electorate with relevant information. Id. at 348, 115 S.Ct. at 1519. The Supreme Court concluded that Ohio's informational interest was insufficient to support the constitutionality of the disclosure requirement and that its interest in preventing fraud and libel did not justify this extremely broad prohibition. Id. at 348-351, 115 S.Ct. at 1519-1521.
Appellee Mortham has argued that disclosure of the individuals or organizations sponsoring political advertisements, even when the advertisements relate to referendum issues, serves the compelling interest of avoiding the actual or apparent corruption of the political process. However, in McIntyre, the Supreme Court rejected an almost identical argument by the State of Ohio regarding Buckley and First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). As the Supreme Court pointed out, "[n]either case involved a prohibition of anonymous campaign literature" as McIntyre did. McIntyre, 514 U.S. at 353, 115 S.Ct. at 1522. Moreover, while "[r]equired disclosures about the level of financial support a candidate has received from various sources," which were at issue in Buckley and Bellotti, "are supported by an interest in avoiding the appearance of corruption," this interest is not applicable to a ban on anonymous election-related speech. McIntyre, 514 U.S. at 354, 115 S.Ct. at 1523. The Supreme Court also drew a sharp distinction between the McIntyre and Buckley disclosure requirements on the basis of their intrusion upon First Amendment rights. While the Court recognized that disclosure of an independent expenditure and its use "impedes protected First Amendment activity," it deemed the intrusion "a far cry from compelled self-identification on all election-related writings." Id. at 355, 115 S.Ct. at 1523.
*939 In McIntyre, the Supreme Court did acknowledge that a State's interest in protecting the electoral process "might justify a more limited identification requirement." Id. at 353, 115 S.Ct. at 1522; see also id. at 358, 115 S.Ct. at 1524 (Ginsburg, J., concurring) ("We do not ... hold that the State may not in other, larger circumstances require the speaker to disclose its interest by disclosing its identity."). However, the Supreme Court offered scant guidance as to when such limited identification would be appropriate or what would constitute a permissible narrowly drawn statute. See id. at 380-81, 115 S.Ct. at 1535 (Scalia, J., dissenting) ("The Court's unprecedented protection for anonymous speech does not even have the virtue of establishing a clear (albeit erroneous) rule of law.... It may take decades to work out the shape of this newly expanded right-to-speak-incognito, even in the elections field."). In fact, the Supreme Court struck down Ohio's very similar statute entirely and described it as "extremely broad," "open-ended," and a "blunderbuss approach." Courts considering similar bans on anonymous political campaign literature have reached the same conclusion. See Virginia Soc'y for Human Life, Inc. v. Caldwell, 906 F.Supp. 1071 (W.D.Va.1995) (finding Virginia statute does not survive strict scrutiny and enjoining its enforcement as to any person); State v. Moses, 655 So.2d 779 (La.Ct.App.1995) (finding Louisiana statute unconstitutional because right to distribute anonymous campaign literature is protected by First Amendment and Louisiana Constitution).
Based upon McIntyre, I conclude that Florida's compelled self-identification as to political advertisements is an unconstitutional infringement of First Amendment rights. While the legislature also provided for the severability in enacting this statute, see chapter 73-128, section 33, at 238, Laws of Florida, I do not find this "cure" applicable here where an overbroad statute reaches a substantial amount of constitutionally protected conduct. Moreover, the task of enacting a more limited identification statute narrowly tailored to serve a compelling state interest must fall to the legislature.
Accordingly, I find section 106.143(1) and the part of section 106.071 requiring disclosure of identity as to political advertisements to be unconstitutionally overbroad. In addition, I would narrowly construe sections 106.071 and 106.144 to require reporting and disclosure only where the election or defeat of a specific candidate for public office is involved. For these reasons, I would reverse the order of the trial court.
GRIMES, Senior Justice, concurs.
NOTES
[1] The district court's order is unpublished. Doe v. Mortham, No. 96-2583 (Fla. 1st DCA Aug. 7, 1996).
[2] Section 106.071(1), Florida Statutes (1995), provides as follows:

Each person who makes an independent expenditure with respect to any candidate or issue, which expenditure, in the aggregate, is in the amount of $100 or more, shall file periodic reports of such expenditures in the same manner, at the same time, and with the same officer as a political committee supporting or opposing such candidate or issue. The report shall contain the full name and address of each person to whom and for whom each such expenditure has been made; the amount, date, and purpose of each such expenditure; a description of the services or goods obtained by each such expenditure; and the name and address of, and the office sought by, each candidate on whose behalf such expenditure was made. Any political advertisement paid for by an independent expenditure shall prominently state "Paid political advertisement paid for by (Name of person or committee paying for advertisement) independently of any (candidate or committee)," and shall contain the name and address of the person paying for the political advertisement.
[3] Section 106.143(1), Florida Statutes (1995), provides in relevant part:

(1) Any political advertisement and any campaign literature published, displayed, or circulated prior to, or on the day of, any election shall:
(a) Be marked "paid political advertisement" or with the abbreviation "pd. pol. adv."
(b) Identify the persons or organizations sponsoring the advertisement.
[4] Section 106.144(1), Florida Statutes (1995), provides in relevant part:

(1) Any group, club, association, or other organization, except organizations affiliated with political parties regulated by chapter 103, which intends to endorse or oppose the candidacy of one or more candidates for public office, or which endorses or opposes any referendum, by means of political advertisements shall, prior to publishing, issuing, broadcasting, or otherwise distributing such advertisement, file a statement as provided by this section with the officer or officers provided in this section.
[5] See generally Richard H. Fallon, Jr., Making Sense of Overbreadth, 100 Yale L.J. 853 (1991).
[6] The statutes protect the integrity of the election process by promoting truthfulness in campaign advertising; by fostering fairness and civility in election campaigns; and by increasing the fund of information available to the electorate. See generally McIntyre, 514 U.S. at 371-385, 115 S.Ct. at 1530-1537 (Scalia, J., dissenting).
[7] The Revenue Act of 1971, Title VIII, 85 Stat. 562, as amended, 87 Stat. 138, and further amended by the Federal Election Campaign Act Amendments of 1974, § 403 et seq., 88 Stat. 1291.
[8] McIntyre, 514 U.S. at 337, 115 S.Ct. at 1514 ("Except for the help provided by her son and a friend, who placed some of the leaflets on car windshields in the school parking lot, Mrs. McIntyre acted independently.").
[9] Id. ("She had composed and printed it on her home computer and had paid a professional printer to make additional copies."). The federal Court emphasized the difference between organized support and independent expenditures. Id. at 353 n. 14, 115 S.Ct. at 1522 n. 14 ("We stress[] the importance of this distinction....").
[10] See Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972) ("Only [state] courts can supply the requisite construction, since of course we lack jurisdiction authoritatively to construe state legislation.") (internal quotation marks omitted); United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971) ("[W]e lack jurisdiction authoritatively to construe state legislation."). See also Lawrence H. Tribe, American Constitutional Law § 12-30 (2d ed. 1988) ("In dealing with state laws, the Court cannot simply substitute a saving reinterpretation of a statute for that authoritatively given the statute by the state's highest court...."). See also Ernest H. Schopler, Annotation, Supreme Court's Views as to Overbreadth of Legislation in Connection with First Amendment Rights, 45 L.Ed.2d 725, 741 (1976):

In determining whether legislation which violates the First amendment on the ground of overbreadth may be saved from invalidity by a narrowing construction, the Supreme Court has made a distinction, based on a general rule, not limited to the overbreadth doctrine, between the scope of its review of federal and state statutes.
This general rule is to the effect that the Supreme Court lacks jurisdiction to authoritatively construe state legislation so as to avoid constitutional issues, but has power to give a federal statute such authoritative construction.
[11] See Traylor v. State, 596 So.2d 957, 962 (Fla. 1992) ("[N]o court is more sensitive or responsive to the needs of the diverse localities within a state, or the state as a whole, than that state's own high court.").
[12] See, e.g., State v. Stalder, 630 So.2d 1072 (Fla. 1994):

We note that in assessing a statute's constitutionality, this court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." Further, "[w]henever possible, a statute should be construed so as not to conflict with the constitution. Just as federal courts are authorized to place narrowing constructions on acts of Congress, this Court may, under the proper circumstances, do the same with a state statute when to do so does not effectively rewrite the enactment."
Id. at 1076 (quoting State v. Elder, 382 So.2d 687, 690 (Fla.1980), and Firestone v. News-Press Publ. Co., 538 So.2d 457, 459-60 (Fla.1989)). See also State v. Globe Communications Corp., 648 So.2d 110 (Fla.1994); Firestone v. News-Press Pub. Co., 538 So.2d 457 (Fla.1989); State v. Elder, 382 So.2d 687 (Fla.1980).
[13] See, e.g., Stalder (giving Florida's hate crimes statute a narrowing construction); Firestone (giving Florida's polling place statute a narrowing construction); Elder (giving Florida's anonymous phone call statute a narrowing construction).
[14] As noted above, section 106.143(1) applies to "[a]ny political advertisement and campaign literature published, displayed or circulated prior to, or on the day of, any election." The phrase "political advertisement" is defined in section 106.011:

(17) "Political advertisement" means a paid expression in any communications media prescribed in subsection (13), whether radio, television, newspaper, magazine, periodical, campaign literature, direct mail, or display or by means other than the spoken word in direct conversation, which shall support or oppose any candidate, elected public official or issue.
[15] As noted above, section 106.071(1) provides in relevant part:

Any political advertisement paid for by an independent expenditure shall prominently state "Paid political advertisement paid for by (Name of person or committee paying for advertisement) independently of any (candidate or committee)," and shall contain the name and address of the person paying for the political advertisement.
[16] See ch. 77-175, § 65, at 1074, Laws of Fla. ("If any provision of this act ... is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.").
[17] To comport with the First Amendment, the last sentence in section 106.071(1) must be truncated to read: "Any political advertisement paid for by an independent expenditure shall prominently state `Paid political advertisement.'"
[18] By way of comparison, the Ohio statute that was in issue in McIntyre allowed no such anonymous disclaimer: "The disclaimer `paid political advertisement' is not sufficient to meet the requirements of this division." McIntyre, 514 U.S. at 338 n. 3, 115 S.Ct. at 1514 n.3.
[19] We find the other arguments raised by the Does to be without merit.
[20] The Court noted three important governmental interests served by the disclosure requirements: (1) provide the electorate with information as to where political campaign money comes from and how it is spent by the candidate to aid voters in evaluating office seekers; (2) deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity; and (3) provide the means of gathering the data necessary to detect violations of contribution limits. Buckley v. Valeo, 424 U.S. 1, 66-68, 96 S.Ct. 612, 657-659, 46 L.Ed.2d 659 (1976).