## YES FOR LIFE POLITICAL ACTION COMMITTEE, Plaintiff,

v.

## Peter B. WEBSTER, et al., Defendants.

### No. Civ. 99–318–P–H.

United States District Court,
D. Maine.

Feb. 7, 2000.

---

James Bopp, Jr., Raeanna S. Moore, B. Chad Bungard, Bopp, Coleson & Bostrom, Terre Haute, IN, John A. McArdle, III, Campbell & McArdle, P.A., Portland, ME, for plaintiff.

William R. Stokes, Phyllis Gardiner, Assistant Attorney General, Augusta, ME, for defendants.

## MEMORANDUM DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

On October 29, 1999, I granted a preliminary injunction in favor of the plaintiff Yes for Life Political Action Committee ("PAC") against the State defendants. I enjoined enforcement of the first paragraph of 21–A M.R.S.A. § 1055. *See Yes for Life Political Action Comm. v. Webster,* 74 F.Supp.2d 37 (D.Me.1999). Since then, the parties have filed cross-motions for summary judgment. They agree that there are no genuine issues of material fact in dispute.[1] I have carefully reviewed the additional legal memoranda and the factual statements submitted by the parties. I find no reason to alter the conclusions that I reached preliminarily on October 29, 1999. As a result, for the reasons given in that opinion, I conclude that the first paragraph of section 1055 is unconstitutional given the Supreme Court's decision in *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).[2]

---

1. The parties agree that federal law does not preempt the Maine statute.

2. I note in reviewing the State's brief that the crux of its argument is that the State has an interest in ensuring that citizens can assess a political message by identifying who the speaker is. This is a common sense argument that has much to commend it in ordinary experience. (It also seems to have weight where a foreign government is the source of a communication, *see Meese v. Keene,* 481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987)). But the Supreme Court has identified a countervailing interest—the value of assessing a

The remaining question is the constitutionality of paragraph 2 of section 1055. It provides:

> A person operating a broadcasting station within this State may not broadcast any such communication without an oral or visual announcement of the name and address of the political action committee that made or financed the expenditure for the communication and [a] statement that reads: "A copy of our report is available from and may be viewed at the office of the Commission on Governmental Ethics and Election Practices."

21-A M.R.S.A. § 1055.

■ In my earlier Order, I expressed concern about the standing of the plaintiff—not a broadcaster but a political action committee—to attack a statute that governs the behavior only of broadcasters. On the summary judgment record, however, it is now undisputed that at least one broadcaster in the State has refused—because and only because of the state statute—to broadcast a political announcement by the plaintiff PAC unless the PAC provides and pays for disclosure of its address and the statement concerning location of the PAC report. *See* Tischart Aff. at ¶¶ 3–6. I conclude, therefore, that the plaintiff has standing to challenge these two requirements.[3] The third-party broadcaster's refusal based on Maine's law, however, relates only to the PAC address and the statement concerning the location of the PAC report. In other words, no third-party broadcaster has stated that in the absence of state law it would broadcast a PAC message without any identification at all of the PAC sponsor. So far as this record shows, therefore, broadcasters may still require disclosure of the PAC-sponsor's identity regardless of the Maine statute's requirement. As a result, I conclude that the PAC has no standing to attack the requirement that its identity be disclosed.[4]

message based upon its substance rather than who is uttering it, *see* 514 U.S. at 348–49, 349 n. 11, 115 S.Ct. 1511—and has pointed out that anonymous speech has been important since the founding of the Republic (*e.g.*, the Federalist Papers), *see id.* at 341–43, 343 n. 6, 115 S.Ct. 1511. As a result *McIntyre* has rejected the State's argument. Although the Supreme Court has also concluded that citizens are entitled to know who is spending money in a campaign, *see Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 119 S.Ct. 636, 647, 142 L.Ed.2d 599 (1999), it has reached that conclusion only in the context of disclosure requirements, not in identification requirements like those here.

The State also argues that the most intensive PAC advertising commonly occurs during the last two weeks before an election and that the state-mandated disclosures may not be available until after the election. *See* Defs.' Cross–Motion for Summ. J. at 16–17. That may be a problem with the disclosure statute, subject to alteration by the Legislature. It does not justify ignoring *McIntyre*.

**3.** The defendants do not seriously contest this standing, although they suggest that the plaintiff has not proven the actual costs of broadcasting the extra information. Under Supreme Court precedent, however, it is clear that the actual costs are not the issue. Instead, a person has a First Amendment interest in not being compelled to make statements he does not wish to make. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group*, 515 U.S. 557, 573–74, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *Clifton v. FEC*, 114 F.3d 1309, 1313 (1st Cir.1997).

**4.** This might be seen as a "Catch–22" for the plaintiff—namely that because of the federal regulation, *see* 47 C.F.R. § 73.1212(e) (1998) (requiring a political broadcast to identify the entity paying for the broadcast), it cannot attack the state statute and because of the state statute it cannot attack the federal statute. That, however, is not the basis for my conclusion that the plaintiff lacks standing to challenge the identification requirement. Instead, it seems reasonable that a broadcast station would require identification in any event to make clear that the message being broadcast was not endorsed by the station itself. Without affirmative evidence on the record that a broadcaster would broadcast an anonymous message without any attribution, I conclude that the plaintiff does not have standing to attack that portion of the Maine statute that requires broadcasters to disclose the identity of a PAC that is broadcasting a message.

The remainder of the case, therefore, boils down to whether the State can constitutionally require a PAC to include its address and a statement that "[a] copy of our report is available from and may be viewed at the office of the Commission on Governmental Ethics and Election Practices" every time it makes a broadcast message. The State has offered no explanation of why such information must be made each and every time that a PAC message is broadcast.[5] Tellingly, there is no comparable requirement when a PAC issues a printed message such as through a flyer or handbill or publication.[6] Essentially what the State is doing here is using broadcast media to advertise the role of the Commission on Governmental Ethics and Election Practices, but making PACs pay for the advertising and making them do so each time a political message is broadcast. I conclude that the requirement is not narrowly tailored, but overbroad. If the State has a need to make the public aware of the existence of its Commission on Governmental Ethics and Election Practices as a repository of PAC reports, it should do so directly, not as part of a PAC's political broadcast. (The State has offered no justification at all in its legal memorandum for the requirement that the PAC address be broadcast.)

As a result, I conclude that the plaintiff is entitled to relief on its Complaint attacking the constitutionality of both the first and second paragraphs of 21–A M.R.S.A. § 1055.[7] The plaintiff will suffer irreparable injury if the statute is enforced against its First Amendment rights, the balance of harms favors the plaintiff because the State has no legitimate interest in violating the First Amendment and the public interest is served by an injunction.

Accordingly, it is hereby ORDERED that the plaintiff's request for a permanent injunction is GRANTED as follows: The defendants are PERMANENTLY ENJOINED from enforcing 21–A M.R.S.A. § 1055 to the extent that it requires a political action committee that makes an expenditure to finance a communication expressly advocating the initiation, promotion or defeat of a ballot question to indicate in the communication that the communication has been authorized or paid for by that political action committee and to the extent that it requires broadcasters to provide an oral or visual announcement of the address of the PAC making or financing a communication and the additional statement that: "A copy of our report is available from and may be viewed at the office of the Commission on Governmental Eth-

---

5. This is not like requiring a professional fundraiser to disclose where its financial statements are available, upheld in *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1231–32 (4th Cir.1989). There the state had an interest in preventing fraud and educating the public about professional solicitations, and the disclosure (written) had to be made only to prospective contributors, the group most in need of the information.

6. The State has cited a number of cases which, it says, stand for the proposition that radio and television broadcasters have circumscribed First Amendment rights and that the State has greater authority to regulate them than it does the print media. *See e.g., Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994), *FCC v. League of Women Voters*, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984), *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), *National Broad.*

*Co. v. United States*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). All of these cases, however, involve the federal government, specifically the Federal Communications Commission, and its regulatory authority. The Supreme Court has concluded that because the broadcast spectrum is limited, Congress through the Federal Communications Commission has greater authority to regulate that spectrum in order to assure the First Amendment interests of the listeners and viewers. I see nothing in those cases, however, to suggest that any of that authority carries over to state legislatures and gives them enhanced authority to intrude upon First Amendment interests of broadcasters or advertisement sponsors.

7. The plaintiff's motion for oral argument is DENIED. There was sufficient opportunity for oral argument at the preliminary injunction hearing.

154

ics and Election Practices." [8] No security is required under Fed.R.Civ.P. 65(c).

So ORDERED.

8. As I noted in my Preliminary Injunction of October 29, 1999, section 1055 states that its enforcement is governed by 21–A M.R.S.A. § 1062–A. Section 1062–A(9) assigns responsibility for enforcement to the Commission, initially, and then to the Attorney General. *See* 21–A M.R.S.A. § 1062–A (West Supp. 1999). It would appear, therefore, that the State District Attorneys have no section 1055 enforcement authority. However, the State has not raised this issue, and the permanent injunction accordingly extends to all the defendants.