OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



June 29, 2000

The Honorable Debra Danburg
Chair, House Committee on Elections
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0243

Re: Constitutionality of section 255.001(a), Texas Election Code, in light of the United States Supreme Court's decision in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) (RQ-0181-JC)

Dear Representative Danburg:

You have asked the opinion of this office as to the constitutionality of section 255.001(a) of the Election Code in light of the decision of the United States Supreme Court in *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), that a similar Ohio statute prohibiting anonymous campaign literature violated the First Amendment. Because *McIntyre* itself is in certain respects ambiguous, because lower courts have differed in their approach to these ambiguities, and because neither the United States Supreme Court, the Texas Supreme Court or Court of Criminal Appeals, nor the United States Court of Appeals for the Fifth Circuit have spoken on these issues, our advice must be limited to a review of the relevant arguments on these unsettled matters. However, it is clear on the basis of *McIntyre* that to the extent that section 255.001(a) attempts to prevent an individual from creating and distributing anonymous printed material from his own resources advocating a position on a particular issue – rather than the choice of a particular candidate – in an election, it violates the First Amendment and is void. Because *McIntyre* may be read narrowly, and in accordance with the Texas Supreme Court's declaration that "we should, if possible, interpret statutes in a manner to avoid constitutional infirmities," *Osterberg v. Peca*, 12 S.W.3d. 31, 51 (Tex. 2000), as well as the directive of section 311.021(1) of the Government Code to the same effect, we presume it to be constitutional in all other respects.

Section 255.001(a) of the Election Code reads:

> (a) A person may not knowingly enter into a contract or other agreement to print, publish, or broadcast political advertising that does not indicate in the advertising:
>
> (1) that it is political advertising;
>
> (2) the full name of either the individual who personally entered into the contract or agreement with the printer,

publisher, or broadcaster or the person that individual represents; and

(3) in the case of advertising that is printed or published, the address of either the individual who personally entered into the agreement with the printer or publisher or the person that individual represents.

TEX. ELEC. CODE ANN. § 255.001(a) (Vernon Supp. 2000).

Political advertising is defined for the purpose of Title 15 of the Election Code as follows:

(16) "Political advertising" means a communication *supporting or opposing a candidate* for nomination or election to a public office or office of a political party, a political party, a public officer, *or a measure* that:

(A) in return for consideration, is published in a newspaper, magazine, or other periodical or is broadcast by radio or television; or

(B) appears in a pamphlet, circular, flier, billboard or other sign, bumper sticker, or similar form of written communication.

*Id.* § 251.001(16) (emphasis added).

The United States Court of Appeals for the Fifth Circuit held in a case involving a television broadcaster that the "sponsorship identification requirement" of section 255.001(a)'s statutory predecessor did not violate the First Amendment, because any infringement on the broadcaster's rights was "of an extremely limited nature" while "the state interest [in the preservation of the integrity of the electoral process] is compelling." *KVUE, Inc. v. Moore*, 709 F.2d 922, 937 (5th Cir. 1983), *aff'd*, 465 U.S. 1092 (1984). However, the *KVUE* case precedes *McIntyre*, about which you inquire, and as we shall discuss may to some extent have been overturned *sub silentio* by *McIntyre*. Accordingly, it is to that case we must turn.

In *McIntyre*, the Supreme Court considered an Ohio statute which forbade any person to "write, print, post, or distribute, or cause to be written, printed, posted, or distributed, [a publication] designed to promote the nomination or election or defeat of a candidate, or to promote the adoption or defeat of any issue," unless the publication disclosed the identity of the person or organization issuing the publication.[1]   *McIntyre*, 514 U.S. at 338 n.3 (quoting OHIO REV. CODE ANN.

---

[1]The Court noted that, while another section of the same statute prohibited anonymous political advertisements
(continued...)

§ 3599.09(A) (1988)) (repealed 1995) (current version at OHIO REV. CODE ANN. § 3517.20). The petitioner's decedent, Mrs. McIntyre, had distributed leaflets urging the rejection of a proposed school tax levy, some of which did and some of which did not identify her as the author. An official of the school district complained to the Ohio Elections Commission, which fined Mrs. McIntyre one hundred dollars for violating section 3599.09(A). *See id.* at 334.

The Court held that "the category of speech regulated by the Ohio statute occupies the core of the protection afforded by the First Amendment." *Id.* at 346. Accordingly, the Court applied "'exacting scrutiny,' [under which it] uphold[s] the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347. The Court rejected Ohio's proposed rationale for the statute, that it provided "the electorate with relevant information" and that it prevented "fraudulent and libelous statements." *Id.* at 348. As to the first, the Court wrote that, "The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit." *Id.* As to the second, the Court found the statute fatally overbroad: "As this case demonstrates, the prohibition encompasses documents that are not even arguably false or misleading. It applies not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using only their own modest resources. It applies not only to elections of public officers, but also to ballot issues that present neither a substantial risk of libel nor any potential appearance of corrupt advantage. It applies not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance. It applies no matter what the character or strength of the author's interest in anonymity." *Id.* at 351-52.

While *McIntyre* holds the Ohio statute unconstitutional, however, it is less than clear whether all statutes prohibiting anonymous political advertisements would be held constitutionally defective. In distinguishing the disclosure requirements of the Federal Election Campaign Act of 1971 upheld by the Court in *Buckley v. Valeo*, 424 U.S. 1 (1976), Justice Stevens, for the majority, wrote:

> The Federal Election Campaign Act . . . regulates only candidate elections, not referenda or other issue-based ballot measures . . . . In candidate elections, the Government can identify a compelling state interest in avoiding the corruption that might result from campaign expenditures. . . . In short, although Buckley may permit a more narrowly drawn statute, it surely is not authority for upholding Ohio's open-ended provision.

*McIntyre*, 514 U.S. at 356. Justice Ginsburg, in her concurrence, underlines the apparent limits of *McIntyre*: "In for a calf is not always in for a cow. The Court's decision finds unnecessary,

---

[1](...continued)
broadcast over radio and television, "[n]o question concerning that provision is raised in this case. Our opinion, therefore, discusses only written communications and, particularly, leaflets of the kind Mrs. McIntyre distributed." *McIntyre*, 514 U.S. at 338. We will consider the effect of *McIntyre* on state broadcast restrictions, particularly in light of *KVUE*, further *infra*.

overintrusive, and inconsistent with American ideals the State's imposition of a fine on an individual leafleteer who, within her local community, spoke her mind, but sometimes not her name. We do not thereby hold that the State may not in other, larger circumstances require the speaker to disclose its interest by disclosing its identity." *Id.* at 358.

In his dissent, Justice Scalia notes the imprecision of the limit to which both the majority opinion and Justice Ginsburg allude, and argues that it is unclear whether and to what extent the state laws against anonymous political speech to which he has cited – a list that includes section 255.001, *id.* at 377 n.2 – may be affected by the Court's decision:

> The Court's unprecedented protection for anonymous speech does not even have the virtue of establishing a clear (albeit erroneous) rule of law. . . . [T]he opinion goes on to proclaim soothingly (and unhelpfully) that "a State's enforcement interest might justify a more limited identification requirement.". . . Perhaps, then, not all the state statutes I have alluded to are invalid, but just some of them; or indeed maybe all of them remain valid in "larger circumstances"! It may take decades to work out the shape of this newly expanded right-to-speak-incognito, even in the elections field.

*Id.* at 380-81.

The decisions of various courts and the opinions of various state attorneys general with regard to election laws akin to that overruled in *McIntyre* have, unhappily, demonstrated the truth of Justice Scalia's prediction. A number of attorneys general have declared their state statutes generally unconstitutional. *See, e.g.,* Op. Del. Att'y Gen. No. 95-FBO1 (Sept. 29, 1995); Op. Mich. Att'y Gen. No. 6895 (Apr. 8, 1996); Op. Minn. Att'y Gen. No. 82t (Aug. 27, 1997); Op. Neb. Att'y Gen. No. 95040 (May 16, 1995); Op. Neb. Att'y Gen. No. 95039 (May 15, 1995) (proposed amendments to correct constitutional defects of Nebraska prohibition on anonymous campaign literature unavailing); Op. N.M. Att'y Gen. No. 97-01 (Jan. 3, 1997); Op. Tenn. Att'y Gen. No. 95-090 (Aug. 29, 1995). State and federal courts have also held such statutes unconstitutional. *See, e.g., Shrink Mo. Gov't PAC v. Maupin,* 892 F. Supp. 1246 (E.D. Mo. 1995), *aff'd,* 71 F.3d 1422 (8th Cir. 1995); *Yes for Life PAC v. Webster,* 74 F. Supp.2d 37 (D. Me. 1999); *Stewart v. Taylor,* 953 F. Supp. 1047 (S.D. Ind. 1997); *West Virginians for Life, Inc. v. Smith,* 919 F. Supp. 954 (S.D. W. Va. 1996); *State v. Moses,* 655 So. 2d 779 (La. Ct. App. 1995).

There have also, however, been a number of court cases and attorney general opinions which have upheld such statutes, at least in part. *See, e.g., Arkansas Right to Life State PAC v. Butler,* 983 F. Supp. 1209 (W.D. Ark. 1997), *aff'd,* 146 F.3d 558 (8th Cir. 1998); *Virginia Soc'y for Human Life, Inc. v. Caldwell,* 152 F.3d 268 (4th Cir. 1998); *Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637 (6th Cir. 1997); *Vermont Right to Life Comm., Inc. v. Sorrell,* 19 F. Supp.2d 204 (D. Vt. 1998); *Doe v. Mortham,* 708 So. 2d 929 (Fla. 1998); 239 Op. Ala. Att'y Gen. No. 37 (May 15, 1995); Op. Md. Att'y Gen. No. 95-015 (May 16, 1995); Va. Rep. Att'y Gen. No. 170 (July 13, 1995).

In a scholarly opinion describing the state of the law, the Attorney General of Oregon noted, "The differences reflect states' and courts' choices whether to read *McIntyre* broadly or narrowly. Read broadly, it applies to all anonymous prohibitions; read narrowly, it applies only to situations that are identical to the precise one at issue in *McIntyre*." Op. Or. Att'y Gen. No. 8266 (Mar. 10, 1999), 1999 WL 133100, at *5.

Generally, the courts and attorneys general who have read *McIntyre* narrowly have construed it to prohibit statutes which forbade anonymous political advertising in elections concerning ballot issues (the situation with which the *McIntyre* court was presented), but not to prohibit such statutes insofar as candidate elections are concerned. *See, e.g., Kentucky Right to Life v. Terry*, 108 F.3d at 647; *Vermont Right to Life Comm., Inc. v. Sorrell*, 19 F. Supp.2d at 215. However, one attorney general opinion and one court case, in narrowing *McIntyre*, read it as a case about the First Amendment rights of a single individual, the rather romantic lone pamphleteer hymned by both Justice Stevens for the majority and Justice Ginsberg in her concurrence. The Attorney General of Maryland, writing less than a month after *McIntyre* was handed down, took the view that "the better interpretation of the Court's decision is that it does not invalidate prohibitions on anonymous campaign material as they may be applied to any other than an individual acting independently." Op. Md. Att'y Gen. No. 95-015 (May 16, 1995), 1995 WL 313052, at *4.

Similarly, the Florida Supreme Court, in *Doe v. Mortham*, 708 So. 2d 929 (Fla. 1998), read *McIntyre* as applying to "the personal pamphleteering of 'individuals acting independently and using only their own modest resources,'" *Doe*, 708 So. 2d at 934, *quoting McIntyre*, 514 U.S. at 351, and narrowed the Florida statute under consideration by holding that "only to the extent that the last sentence in this section requires identification of independent advertisements made by individuals does it run afoul of the First Amendment." *Id.*

Neither the Texas Supreme Court or Court of Criminal Appeals, which have the power to adopt a narrowing construction of section 255.001(a), nor the United States Court of Appeals for the Fifth Circuit has spoken on the issue before us. So far as we can determine, the Texas Supreme Court has taken substantive note of *McIntyre* in only one case, *Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000). *Osterberg*, however, dealt with the issue of unreported campaign expenditures, and affords only limited guidance with respect to the issue of anonymous advertising. The only advertisement at issue, a television commercial opposing Judge Peca's re-election, included the line, "Ad paid for by Bob Osterberg," *see id.* at 36, and the charge against the Osterbergs was failure to report the direct expenditure for the ad, pursuant to section 253.131 of the Election Code, rather than a violation of section 255.001.

It is of note that, in *Osterberg*, the Supreme Court narrowly construes the definition of campaign expenditures, holding that "a 'direct campaign expenditure' by an individual in a candidate election includes only those expenditures that 'expressly advocate' the election or defeat of an identified candidate." *Id.* at 51. Certainly the court's observation that "we should, if possible, interpret statutes in a manner to avoid constitutional infirmities," *see id.*, suggests that it might be disposed to narrow a statute such as section 255.001 to avoid the *McIntyre* problem. But to forecast

how the court might deal with section 255.001 solely on the basis of *Osterberg* would be an exercise in mere speculation.

As we have noted, no Fifth Circuit case on section 255.001 post-dates *McIntyre*. Moreover, the status of *KVUE* is now less than clear. It might have been supposed that, since the Court in *McIntyre* explicitly "discusses only written communications," *see McIntyre*, 514 U.S. at 338 n.3, then *KVUE*, which concerned radio and television broadcast advertising, was unaffected. The Oregon Attorney General noted last year that "until the Supreme Court revisits this issue, only two absolutely clear conclusions exist. First, a statute prohibiting an individual from distributing issue-related leaflets violates the First Amendment. Second, no case yet holds that prohibiting anonymous broadcasts violates the First Amendment." Op. Or. Att'y Gen. No. 8266 (Mar. 10, 1999), 1999 WL 133100, at *6. The second of these "absolutely clear conclusions," however, is no longer the case. In February of this year, the United States District Court, in *Yes for Life PAC v. Webster*, 84 F. Supp. 2d 150 (D. Me. 2000), declared a Maine election statute which required a political action committee to identify itself as the source of a broadcast political message unconstitutional on the basis of *McIntyre*. *See Yes for Life PAC*, 84 F. Supp.2d at 151.

In *Yes for Life PAC*, the court distinguished a number of cases standing "for the proposition that radio and television broadcasters have circumscribed First Amendment rights and that the State has greater authority to regulate them than it does the print media. All of these cases, however, involve the federal government, specifically the Federal Communications Commission, and its regulatory authority. . . . [The court] see[s] nothing in those cases, however, to suggest that any of that authority carries over to state legislatures and gives them enhanced authority to intrude upon First Amendment interests of broadcasters or advertisement sponsors." *Id.* at 153 n.6. A court persuaded, like the *Yes for Life PAC* court, that *McIntyre* applied to broadcasting might well hold that *KVUE* had been overturned by operation of law.[2]

We note that the constitutionality of section 255.001(a) is now before the Court of Appeals for the Fifth District of Texas in two related cases, *State v. Doe*, No. 5-99-01091-CR, and *State v. Antonelli*, No. 5-99-01907-CR. The cases are now *sub judice*, and their resolution may provide further guidance on this issue.

In the present uncertainty concerning the meaning and limits of the *McIntyre* case, our conclusions with regard to your question are necessarily limited. In our view, it is clear that section 255.001(a) of the Texas Election Code cannot constitutionally be enforced against a private individual who creates and/or distributes anonymous printed political material from his or her own resources advocating a position on a particular issue, rather than the choice of a particular candidate, in an election. The statute may be constitutional in other contexts; and given that we do not possess a narrowing construction of the statute by the Texas Supreme Court or Court of Criminal Appeals,

---

[2]It is probably worthy of note that the *Yes for Life PAC* case grew out of a controversy over issue advertising. *See Yes for Life PAC v. Webster*, 74 F. Supp. 2d 37, 38 (D. Me. 1999) (concluding that "under United States Supreme Court precedent, the required disclosure of the PAC's identity in political messages concerning a noncandidate ballot measure violates the First Amendment.")

or an interpretation of the limits of *McIntyre v. Ohio Elections Commission* by either the United States Court of Appeals for the Fifth Circuit or ultimately the United States Supreme Court, we must presume such constitutionality in those respects. *See* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) (it is presumed that legislature intended statute to comply with state and federal constitutions); *Osterberg v. Peca*, 12 S.W.3d at 51.

## S U M M A R Y

It is clear that section 255.001(a) of the Texas Election Code cannot constitutionally be enforced against a private individual who creates and/or distributes anonymous printed material from his own resources advocating a position on a particular issue, rather than the choice of a particular candidate, in an election. The statute may be constitutional in other contexts; and given that we do not possess a narrowing construction of the statute by the Texas Supreme Court or Court of Criminal Appeals, or an interpretation of the limits of *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), by either the United States Court of Appeals for the Fifth Circuit or ultimately the United States Supreme Court, we must presume such constitutionality in those respects.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee