742 So.2d 835 (1999)
Robert HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-00887.
District Court of Appeal of Florida, Second District.
September 10, 1999.
*836 Jeffrey Sullivan, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, Judge.
Appellant, Robert Harris, challenges his convictions on four counts of committing a lewd and lascivious assault on a child under sixteen. He raises three issues on appeal. We find none of them to constitute reversible error and affirm.
Appellant was an adult counselor in the SAFE program at the Gulf Coast Marine Institute, where he came into contact with the fifteen-year-old victim, A.C., who was a student at the Institute.
In his first issue, Appellant argues that the trial court failed to conduct a proper inquiry pursuant to Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). We disagree. A Nelson inquiry is required where the defendant alleges that his counsel is ineffective and asks to discharge him. A review of the record reveals that Appellant was not dissatisfied with his attorney until the court denied defense counsel's motion for a continuance that was filed on the day of trial. On the day that trial was scheduled, Appellant's counsel, an assistant public defender, made a written and oral motion for a continuance, alleging essentially that he had not properly prepared for trial, had not completed discovery, and had been misinformed that trial would probably not begin on that day. After listening to argument from both sides, the court concluded that defense counsel had had ample time to prepare for trial, especially given the fact that counsel had not been out of town the week before, as originally anticipated, thus giving counsel additional time to prepare. The trial *837 judge made the following specific findings regarding the progress of the case:
The arrest of the Defendant occurred on May 22nd. Counsel for the Defendant was appointed on June 2nd. Arraignment was scheduled on June 13th. The arraignment occurred on June 13th, and trial was set for September 10th. Discovery request was made on June 26th. Response to discovery was furnished by the State on July 8th. The first depositions in the case were scheduled on August 25th, none of which were the victim, all of which were police officersall of whom were police officers. On August 18th, a supplemental discovery was filed with no additional witnesses. On September 4th, other depositions were scheduled, again none of the victim. On September 10th, the case was continued to December 8th on stipulation. On October 9th, more depositions were taken, again none of the victim. On December 4th, the case was continued to February 2nd on stipulation. Depositions were then taken again on January 29th.
Ample time has been afforded the Defense to prepare.
With respect to the Defendant's allegations in paragraph 9, I would only say that it was represented to the Court that defense counsel would be out of the state during the first week of the trial term. Based on that representation I had indicated that it would be likely that the Robert Harris case would not go to trial. I learned this morning that the defense counsel in fact was not out of state, was in fact inat work all of last week, and had ample time to prepare the case for trial.
When the court denied the motion for a continuance, counsel only then moved to withdraw, stating, "I do not feel that I'm in a position to meet my ethical obligations, regardless of the reasons. But at this time because I am not able to zealously represent my client, I would ask to withdraw from his representation." The court denied the motion, and counsel advised the court that a Nelson inquiry was required. The court then asked Appellant what he had to say, and Appellant responded that under the circumstances, he believed that his attorney was not ready to represent him in trial, and that he therefore wished to dismiss his attorney and have another attorney appointed to represent him "that we may be ready for trial, if it pleases the Court."
The court then asked Appellant, "All right, and the basis for your request that you get a new lawyer is that Mr. Belmont (counsel) is ineffective?" Appellant responded, "Yes, sir". When asked, Appellant added, "He hasn't acquired with depositions and things that I have asked him for, sir." The court denied the motion to discharge counsel, stating that defense counsel had had ample time to prepare for trial, and that this latest motion for a continuance was obviously another delaying tactic. Specifically, the court stated:
And I'm going to make a finding that at this point, despite his statement to the effect that he believes that he is ineffective, that there has been a conscious decision here to delay and procrastinate and a tactical decision not to depose or to file motions, and that this has been part of the defense strategy in proceeding on this case, in light of the Court's two prior two-month continuances and an original delay of three months in setting the case for trial initially.
It is apparent then that Appellant's claim of ineffective counsel was not only disingenuous, but was only asserted as a back-up position after the motion for a continuance was denied. We are not convinced that the court was required, under such circumstances, to conduct a Nelson inquiry. We have long been concerned that defendants at the time of trial or during trial inappropriately attempt to discharge counsel for a variety of reasons but mainly and clearly for the purpose of delay. Such tactics should not be allowed. Having reviewed the inquiry conducted by the trial judge, we conclude that he did, in *838 fact, conduct a proper Nelson inquiry since he asked both Appellant and his counsel what the grounds of ineffectiveness were. The court simply did not find reasonable cause to believe that counsel was not effective.
We conclude that the court did not err in its disposition of Appellant's motion to discharge his counsel.
Appellant's second issue is that the court erred in refusing to give requested jury instructions in regard to Count I. We find no error in that regard.
In Count I, Appellant was charged with violating section 800.04(3), Florida Statutes (1997), in that he committed an act defined as sexual battery under section 794.011(1)(h), Florida Statutes (1997), upon a child under the age of sixteen years. Specifically, Count I alleged that Appellant's penis penetrated or had union with the vagina of the minor victim.
During the charge conference, Appellant asked the court to read two category two lesser instructions to the jury, one on an unnatural and lascivious act, as proscribed by section 800.02, Florida Statutes (1997), and battery. The court agreed to read the battery instruction as to all four counts, and agreed to read the instruction on an unnatural and lascivious act as to Counts II, III and IV. As to Count I, however, the court ruled:
[A]lthough it's [Count I] an 800, it's entitled `Lewd and Lascivious Act,' really what we're talking is sexual battery. And an unnatural and lascivious act, which I define as sodomy, basically can be a lesser included. In fact, it has been charged in Counts 2, 3 and 4, so for that reason in Count 2, 3 and 4, I will give unnatural and lascivious act.
Count I, however, charges sexual intercourse, and that is not something that's prohibited by 800.02, so it doesn't fall within the definition of an unnatural and lascivious act.
"When deciding whether an instruction for a category two offense is necessary, a trial judge must `analyze the information or indictment and the proof to determine if elements of category 2 crimes may have been alleged and proved.'" Williams v. State, 627 So.2d 1279, 1280 (Fla. 1st DCA 1993). Count I of the information alleged that Appellant's penis had penetrated or had sexual union with the vagina of A.C. The history of section 800.02, which proscribes "unnatural and lascivious acts" indicates that it has been applied to homosexual acts, bestiality, digital sex, and oral sexanything other than adult male and female sexual intercourse. See Franklin v. State, 257 So.2d 21 (Fla. 1971); Button v. State, 641 So.2d 106 (Fla. 2d DCA 1994); McGahee v. State, 561 So.2d 333 (Fla. 1st DCA 1990); Mohammed v. State, 561 So.2d 384 (Fla. 1st DCA 1990). The term "unnatural" is defined generally as "violating natural law; inconsistent with an individual pattern or custom; deviating from a behavioral, ethical, or social norm." Mohammed v. State, 561 So.2d 384, 385. The jury instructions for section 800.02 define "unnatural" as "not in accordance with nature or with normal feelings or behavior."
If we were to interpret the statutes as Appellant would have us interpret them, there would be no need for section 800.02 because it would be subsumed within section 800.04. Since we must interpret statutes so as to give a logical and orderly meaning to all sections, we must conclude that the legislature intended for section 800.02 to be applied to different factual situations than would fall under section 800.04. The term "unnatural" in 800.02 distinguishes 800.02 from 800.04, and implies something more than what is covered by 800.04. Given the historical background of these statutes and the definitions of the term "unnatural," we conclude that the court correctly refused to give the "unnatural act" instruction on Count I, which charged Appellant with placing his penis in union with the victim's vagina.
*839 Appellant's third and last issue alleges improper prosecutorial comments in closing argument. While the prosecutor's comments were improper, they did not vitiate the trial or so poison the minds of the jurors that Appellant did not receive a fair trial. See King v. State, 623 So.2d 486 (Fla.1993). In three instances, the court sustained Appellant's objections and gave curative instructions.
Affirmed.
PATTERSON, C.J. and SALCINES, J., Concur.