664 So.2d 1085 (1995)
STATE of Florida, Petitioner,
v.
Theodore Roosevelt CAMPBELL, Respondent.
No. 95-1392.
District Court of Appeal of Florida, Fifth District.
December 8, 1995.
*1086 Norman R. Wolfinger, State Attorney and Sean G. Anderson, Assistant State Attorney, Cocoa, for Petitioner.
Tad Kokoszka of Kokoszka & Gutin, Cocoa, for Respondent.
GOSHORN, Judge.
In a sexual battery prosecution, the State of Florida seeks certiorari review of the trial court's order on its motion to allow child hearsay. The court held part of paragraph 90.803(23)(a), Florida Statutes (1993), unconstitutional and barred the State from introducing the child hearsay for any statements made when the victim's physical age was over eleven years. After review, we conclude the court's order departs from the essential requirements of law. We grant the petition for certiorari, issue the writ, and quash the court's order.

THE FACTS
The State charged Theodore Roosevelt Campbell with one count of sexual battery on a child by a person in familial or custodial authority.[1] At the time the crime was allegedly committed, the victim was twelve years of age. She made statements to relatives describing Campbell's criminal acts while she was still twelve years of age.
In November 1994, Dr. Cheryl Larson, a licensed psychologist, evaluated the victim to determine her mental age. In Dr. Larson's expert opinion, the child victim was functioning at a mental age equivalent to that of a seven or eight year old child.[2]
The State then filed its motion to allow the child victim hearsay pursuant to paragraph 90.803(23)(a). At the hearing, the State presented the testimony of Dr. Larson as well as that of another licensed psychologist, Dr. Howard Bernstein. Campbell produced Dr. Jeffrey Williamson.
After hearing the expert testimony and argument from counsel, the trial court ruled that the statute was unconstitutionally vague because
1. There is no statutory definition of the terms "physical, emotional or developmental" age, and
2. The terms have no commonplace meaning and can only be defined by experts, and
3. The experts could not agree among themselves as to their meaning.

*1087 THE LAW
We begin our analysis by observing that "[t]he legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague." State v. Hagan, 387 So.2d 943, 945 (Fla. 1980). Hagan explains, "In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." Id. See also State v. Hodges, 614 So.2d 653, 654 (Fla. 5th DCA 1993) (stating that the term "flea market" possesses "a plain and ordinary meaning which can be readily understood by reference to a dictionary and common experience") (citation omitted).
Next, while it is true that the three terms at issue in the instant case are primarily used in the field of psychology, the terms have recognized and accepted definitions elsewhere. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (26th ed. 1981) defines these terms as follows:
Developmental Age: Age estimated from the degree of anatomical development. In psychology, the age of an individual as determined by the degree of his emotional, mental, anatomical, and physiologic maturation.
Emotional Age: The age of an individual expressed in terms of the chronological age of an average normal individual showing the same degree of emotional maturity.
Mental Age: The score achieved by a person in an intelligence test, expressed in terms of the chronological age of an average normal individual showing the same degree of attainment.
Id. at 38-39. In fact, one of the terms, "mental age," has a commonplace meaning to the extent it is defined in a general dictionary. The RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (1987 2d ed. unabridged) defines "mental age" as follows:
Mental Age: The level of native mental ability or capacity of an individual, usually as determined by an intelligence test, in relation to the chronological age of the average individual at this level: A 10-year-old child with the mental age of a 12-year-old; a mental age of 12.
It is even more significant that the concepts of "mental age" and "emotional age" are both a part of Florida case law. In particular, the phrase "mental age" was included in Florida jurisprudence well before the enactment of paragraph 90.803(23)(a) in 1985. See Schaeper v. J.M. Fields, Inc., 362 So.2d 350, 350 (Fla. 1st DCA 1978) (describing plaintiff in false arrest action as "a 14-year-old Mongoloid child with the mental age of a four-year-old ..."); Mathis v. Lambert, 274 So.2d 601, 602 (Fla. 3d DCA 1973) (plaintiff in personal injury action referred to as "a twelve year old mentally retarded child with a mental age of five years"). The term "mental age" continues to be used today. See, e.g., Corbett v. State, 602 So.2d 1240, 1242 (Fla. 1992) (noting psychologist's testimony that defendant "had a mental age of about fourteen"); Cerkella v. State, 588 So.2d 1058, 1060 (Fla. 3d DCA 1991) (referencing IQ test that "showed the defendant functioning at the mental age of five years and eleven months"); Caso v. Department of Health & Rehabilitative Servs., 569 So.2d 466, 468 (Fla. 3d DCA 1990) (noting that child's "mental age was only four years, nine months"); see also Fla.R.Juv.P. 8.095(d)(2)(A) (requiring report on "[t]he mental illness, mental retardation, or mental age causing incompetence"). In sum, the concept of "mental age" appears to be well-entrenched in Florida law.
The concept of "emotional age" is also a part of Florida jurisprudence. See Saavedra v. State, 622 So.2d 952, 962 (Fla. 1993) (Barkett, J., concurring specially) (noting that courts and officers should consider "the youth's physical, mental, and emotional age ..." in assessing validity of minor's consent to police action), cert. denied, ___ U.S. ___, 114 S.Ct. 901, 127 L.Ed.2d 93 (1993); Scull v. State, 533 So.2d 1137, 1143 (Fla. 1988) (stating that defendant's "age of twenty-four alone could not establish a mitigating factor, but factors which were observable by the judge during the trial and sentencing proceeding support his finding that [defendant's] emotional age was low enough to sustain this mitigating circumstance"), cert. denied, 490 U.S. 1037, *1088 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989); Fitzpatrick v. State, 527 So.2d 809, 811 (Fla. 1988) (observing that "record on resentencing is replete with evidence of [defendant's] substantially impaired capacity, his extreme emotional disturbance, and low emotional age").
"Developmental age" is also defined and discussed in a variety of reference works. See 20 THE NEW ENCYCLOPaeDIA BRITANNICA (MICROPaeDIA) 470 (15th ed. 1985); LONGMAN DICTIONARY OF PSYCHOLOGY AND PSYCHIATRY 217 (1984); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 618 (1976 unabridged) (defining "developmental quotient").
In short, all three statutory terms have accepted meanings within the field of psychology. Two are a part of Florida jurisprudence and at least one has a commonplace meaning outside the field of psychology.
We grant the petition for certiorari and issue the writ quashing the trial court's order.
PETITION GRANTED; WRIT ISSUED; ORDER QUASHED.
PETERSON, C.J., and THOMPSON, J., concur.
NOTES
[1] § 794.011(8)(b), Fla. Stat. (1993).
[2] Paragraph 90.803(23)(a) allows a child victim's hearsay statement when that child has

a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child... .