782 So.2d 888 (2001)
STATE of Florida, Appellant,
v.
Francis DuFRESNE, Appellee.
No. 4D99-1375.
District Court of Appeal of Florida, Fourth District.
January 24, 2001.
*889 Robert A. Butterworth, Attorney General, Tallahassee, and Georgina Jimenez Orosa, Assistant Attorney General, West Palm Beach, for appellant.
Michael Dubiner and Mark Wilensky of Dubiner & Wilensky, P.A., West Palm Beach, for appellee.
PER CURIAM.
We filed our original opinion in this case on September 13, 2000. In that opinion we held that because the term "mental injury" was undefined, a statute making it a felony to commit an intentional act which could reasonably be expected to result in mental injury to a child was unconstitutionally vague. The next day the Florida Supreme Court issued State v. Fuchs, 769 So.2d 1006 (Fla.2000). In Fuchs the court held that a penal statute which failed to define "delinquent," "dependent child," or "child in need of services" was not unconstitutionally vague, because definitions for those terms could be found in other statutes. We then withdrew our opinion on September 14, 2000, and asked the parties to file supplemental briefs addressing Fuchs. The opinion which follows includes much of our original opinion, and then addresses Fuchs.
Florida's child abuse statute makes it a felony to commit an intentional act which could reasonably be expected to result in "mental injury" to a child. The trial court held the statute unconstitutional as being both overbroad and vague. We conclude that the statute is not facially invalid under the overbreadth doctrine, because it can be narrowly construed so that it does not apply to speech. Although we originally agreed with the trial court that the statute was vague, Fuchs requires a different result.
Appellee, a public school teacher who works with autistic children, was charged with five counts of child abuse involving different children, contrary to section 827.03, Florida Statutes (Supp.1996), which provides:
Abuse, aggravated abuse, and neglect of a child; penalties.
(1)"Child abuse" means:
(a) Intentional infliction of physical or mental injury upon a child;
(b) An intentional act that could reasonably be expected to result in physical or mental injury to a child; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.
A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree,
. . .
[Emphasis added.]
Appellee filed a motion for statement of particulars to which the state responded as follows:
1. That as to Count I involving K.E., the act alleged is force-feeding;
2. That as to Count II involving Su.A. is slapping and/or screaming at and/or telling Su.A. that she is "bad";
3. That as to Count III involving J.G.C., the act alleged is slapping and/or striking;
4. That as to Count IV involving E.A. the act alleged is force-feeding;

*890 5. That as to Count V involving Sh.A., the act alleged is screaming at Sh.A. because he was touching his genital area and/or screaming at Sh.A. to go to the bathroom.(R25)
Appellee then moved to dismiss, arguing that the statute was unconstitutionally overbroad because it applied to speech protected by the First Amendment and was unconstitutionally vague because "mental injury" was not defined. At the hearing on the motion the state conceded that there was no evidence of any physical injuries caused by appellee. It was the state's position that the appellee could be convicted of felony child abuse for humiliating a child.
The trial court held the statute unconstitutional as being both overbroad and vague based on the same reasoning. However, as the Florida Supreme Court explained in Southeastern Fisheries Ass'n v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984):
Too often, courts and lawyers use the terms "overbroad" and "vague" interchangeably. It should be understood that the doctrines of overbreadth and vagueness are separate and distinct. The overbreadth doctrine applies only if the legislation "is susceptible of application to conduct protected by the First Amendment." Carricarte v. State, 384 So.2d 1261, 1262 (Fla.), cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980)(citing Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).

Overbreadth
The Florida Supreme Court explained the overbreadth doctrine in Wyche v. State, 619 So.2d 231, 235 (Fla.1993):
When legislation is drafted so that it may be applied to conduct that is protected by the First Amendment, it is said to be unconstitutionally overbroad. See Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984). This overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially "because it also threatens others not before the court-those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). [footnote omitted.]
In this case some of the counts are based solely on oral statements. Section 827.03(1)(b) is, accordingly, being used to prosecute conduct protected by the First Amendment. Schmitt v. State, 590 So.2d 404, 412 (Fla.1991)("Application of the overbreadth doctrine is particularly appropriate where ... the statute clearly infringes upon protected forms of free speech.").
It does not automatically follow, however, that the statute is facially invalid. A statute is facially invalid as overbroad only if it "reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In Doe v. Mortham, 708 So.2d 929, 931 (Fla.1998), the Florida Supreme Court, explaining that courts should attempt to narrowly construe statutes before holding them facially invalid as overbroad, quoted from Broadrick v. Oklahoma, 413 U.S. 601, 616, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973):
It remains a "matter of no little difficulty" to determine when a law may properly be held void on its face and when "such summary action" is inappropriate. *891 But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function [is a] limited [one].... To put the matter another way ... we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that [the Oklahoma statute] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.
If a statute which punishes protected speech can be narrowly construed so as to avoid its application to speech, the statute can withstand an overbreadth challenge. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Doe.[1]
The state's interest in protecting children from physical abuse, which is the primary purpose behind the statute involved in this case, is compelling. Any constitutionally protected conduct which could be prosecuted under this statute is insubstantial, compared to the other types of conduct to which the statute is directed. We conclude, as our supreme court did with the election laws involved in Doe, that this statute is not substantially overbroad and can be upheld against an overbreadth argument by narrowly construing it as not applicable to speech.

Vagueness
Our limitation of section 827.03 so that it is not applicable to speech does not resolve all of the issues in this case, because two of the counts in this case charged appellee with "force feeding," and two other counts charged appellee with "slapping" or "striking." The state acknowledged to the trial court that it had no proof of physical injuries caused by this conduct and that it was relying solely on mental injury. The trial court held the term "mental injury" unconstitutionally vague.
A statute is vague if it "fails to give adequate notice of what conduct is prohibited." S.E. Fisheries, 453 So.2d at 1353. Penal statutes which are vague violate the due process clause of the United States Constitution. Id. One of the purposes of due process is to make sure that no person is convicted unless a fair warning has first been given "in language that the common world will understand, of what the law intends to do if a certain line is passed." McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931); Mourning v. Family Publ'ns Serv., Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).
Appellee contends, and the trial court found, that the term "mental injury," which is not defined in the statute, is unconstitutionally vague. As Judge Oftedal explained in the order under review:
Were the statute limited to the expectation of physical injury, it might pass constitutional muster. But to require ordinary persons to be knowledgeable as to the likelihood of whether their words *892 or actions would result in "mental injury" asks too much. There are no statutory guidelines regarding such conduct and the term "mental injury" is left undefined. While the legislature certainly has the authority and indeed, the duty, to prohibit and punish child abuse "it must do so with a reasonable precision that does not simultaneously outlaw innocent conduct and the normal incidents of home-life." Schmitt [v. State, 590 So.2d 404, 413 (Fla.1991) ].
The statute as amended could possibly subject all those parents who ever called their children "stupid" or other less flattering and insulting terms to criminal prosecution in the event someone determined that such insults were likely to demean the child, even in the absence of any objective harm or injury....
Other hypothetical situations illustrating the vagaries and overbreadth of the statute abound. Is the over-zealous Little League coach who benches his left fielder for dropping a pop-fly, guilty of committing a third degree felony because the child may likely suffer humiliation and a subsequent loss of confidence or self-esteem? ... Are these the kind of "mental injuries" of which the statute speaks and if so, who makes that determination? The State confessed that it cannot. If the Assistant State Attorney charged with enforcement and prosecution of the statute cannot discern whether such behavior is a crime, how can a layperson be expected to do so, especially given the State's position that humiliation alone is sufficient to trigger the statute.
The state relies on State v. Riker, 376 So.2d 862 (Fla.1979), in which the 1977 version of the child abuse statute, section 827.04(2), made a person who "knowingly or by culpable negligence, permits physical or mental injury to the child," guilty of a misdemeanor. The Florida Supreme Court held that the words "mental injury," as well as the other provisions of the statute, were not void for vagueness. Riker is distinguishable, however, because the 1977 version of this statute contained the following definition of "mental injury:"
"Mental injury" means an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in his ability to function within his normal range of performance and behavior, with due regard to his culture.
§ 827.07(i), Fla.Stat. (1977). The above definition was removed from Chapter 827 in 1983, along with other provisions involving reporting, investigating, and preventing child abuse, and moved to Chapter 415. The definition was moved from section 415.503(8) to section 39.01(44) in 1998. See ch. 98-403, § 19, Laws of Fla.[2]

Fuchs
In our original opinion, we concluded that "mental injury" as used in section 827.03 was unconstitutionally vague; however Fuchs appears to require a contrary result. In Fuchs the defendant was charged with violating section 827.04(1)(a), Florida Statutes (1997), which makes it a misdemeanor to commit "any act which causes, tends to cause, encourages, or contributes to a child becoming a delinquent or dependent child or a child in need of services." The county judge held the statute unconstitutionally vague and certified the following question to the Fifth District *893 Court of Appeal as one of great public importance:
Whether Florida Statute 827.04(1)(a) is unconstitutionally vague in that the prohibited conduct, omissions and or standard of conduct of an accused is not defined and the statute fails to define the terms "delinquent," "dependent child," or "child in need of services."
State v. Fuchs, 751 So.2d 603, 605 (Fla. 5th DCA 1999). The fifth district, using an analysis similar to the one we used in our original opinion in this case, concluded that the statute was unconstitutionally vague, but certified the question to the Florida Supreme Court as one of great public importance.
The Florida Supreme Court reversed, holding that the lack of definition of a vague term in a penal statute does not make the statute unconstitutionally vague if a definition of the term can be found in other statutes. In Fuchs the supreme court found definitions for the terms, which were undefined in Chapter 827, in Chapters 39, 984, and 985, statutes dealing with dependency, family services, and delinquency. The court explained:
First, it is well settled that the "legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague. In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term...." State v. Hagan, 387 So.2d 943, 945 (Fla.1980), cited with approval in State v. Mitro, 700 So.2d 643, 645 (Fla.1997); L.B. v. State, 700 So.2d 370, 372 (Fla.1997); St. Surin v. State, 745 So.2d 514, 516 (Fla. 3d DCA 1999); State v. De La Llana, 693 So.2d 1075, 1078 (Fla. 2d DCA 1997); State v. Campbell, 664 So.2d 1085, 1086 (Fla. 5th DCA 1995); Nephew v. State, 580 So.2d 305, 306 (Fla. 1st DCA 1991). In Hagan, we found that a statute which penalized "trawling operations" that utilized more than one "trawl net" within "Charlotte County" was constitutional even though the Legislature had failed to define the quoted terms. See 387 So.2d at 945-946. We reasoned that because the term "Charlotte County" could be ascertained by looking at a different statute which delineated the boundary lines of Charlotte County, and that because the terms "trawling operation" and "trawl net" could be defined by industry custom or by resort to a dictionary, the Legislature's failure to provide a definition did not render the statute unconstitutional. See id. The Hagan court added that a statute may be constitutional "even though it contains general terms and does not furnish detailed plans and specifications of the act or conduct proscribed." Id. at 946.
Second, statutes which relate to the same or closely related subjects should be read in pari materia. See State v. Ferrari, 398 So.2d 804, 807 (Fla.1981)(finding that a statute which attached criminal responsibility for embezzlement to one who misappropriated construction funds was not void for vagueness despite the fact that it failed to define when a bill became due and owing because that definition could be derived from Florida's version of the UCC); see also State v. Espinosa, 686 So.2d 1345, 1347 (Fla.1996)(reading a statute which penalized resisting a lawful arrest with violence in pari materia with statute that prohibited use of force to resist an arrest so as to eliminate the element that the arrest must be lawful when resisting a lawful arrest with violence is charged). Third, and relatedly, "[a]lthough the legislature may direct that statutes be read in pari materia, the *894 absence of that directive does not bar such a reading."
Fuchs, 769 So.2d at 1009.
The supreme court also relied in Fuchs on the fact that until 1996 the allegedly vague terms were followed by the phrase "as defined under the laws of Florida." That language was removed by a 1996 amendment.
We are unable to distinguish the present case from Fuchs. In the present case, as we noted earlier, "mental injury" is defined in section 39.01(44), Florida Statutes (Supp.1998), as follows:
"Mental injury" means an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in his ability to function within his normal range of performance and behavior.
The trial court's conclusion that section 827.03 is vague because the term "mental injury" is undefined is contrary to Fuchs. In fairness to the trial judge, it should be noted that the state did not, either in the trial court or in this court, suggest that the vagueness of section 627.03 could be cured by using a definition contained in a different statute. We reverse, but certify the following question as one of great public importance:
IS THE TERM "MENTAL INJURY" IN SECTION 827.03(1)(b), FLORIDA STATUTES (1996) UNCONSTITUTIONAL BECAUSE IT IS VAGUE?
GROSS, J., and FINE, EDWARD H., Associate Judge, concur.
KLEIN, J., concurs specially.
KLEIN, J., concurring specially.
I agree with the majority opinion, but only because Fuchs requires the result. The rationale of Fuchs, however, that the legislature need not define a vague term in a penal statute if that term is defined elsewhere, troubles me. As the United States Supreme Court observed in Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926):
That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. (emphasis added.)
In her supplemental brief addressing Fuchs, Mrs. Dufresne points out that neither the prosecutor in the trial court, nor the assistant attorney general handling this appeal, ever suggested that the definition missing in the penal statute could be supplied from other statutes. If it did not occur to people trained in the law, she asks, how are ordinary people supposed to understand what conduct is prohibited?
The same point was made by the Florida Supreme Court in Hermanson v. State, 604 So.2d 775 (Fla.1992). In that case the Florida Supreme Court reversed the convictions of Christian Science parents for felony child abuse and third degree murder for failing to obtain conventional medical treatment for their child. The court held that the provisions of our criminal and civil child abuse statutes, which authorized Christian Science spiritual healing, were ambiguous and that the defendants were denied due process. Our supreme court explained:
To say that the statutes in question establish a line of demarcation at which a person of common intelligence would *895 know his or her conduct is or is not criminal ignores the fact that, not only did the judges of both the circuit court and the district court of appeal have difficulty understanding the interrelationship of the statutes in question, but, as indicated by their questions, the jurors also had problems understanding what was required.
Id. at 782.
I am unable to reconcile the Florida Supreme Court's decision in Fuchs with its decision in Hermanson. I agree with the majority that the question involved in this case is one of great public importance.
NOTES
[1] The state relies on State v. Bley, 652 So.2d 1159, 1160 (Fla. 2d DCA 1995), in which the court stated:

The overbreadth doctrine applies only if the challenged legislation is directed to conduct protected by the First Amendment. South-eastern Fisheries Ass'n, Inc. v. Dep't of Natural Resources, 453 So.2d 1351 (Fla.1984). The issue is not whether the challenged statute is "directed to" conduct, but rather whether the statute is "susceptible of application to conduct protected by the First Amendment." S.E. Fisheries, 453 So.2d at 1353 and cases cited.
[2] In State v. Bley, 652 So.2d 1159 (Fla. 2d DCA 1995), the court upheld the 1995 version of our child abuse statute against a vagueness attack, but it did so relying on Riker. Bley contained no definition of mental injury, while the 1977 version of the statute at issue in Riker did.