789 So.2d 1032 (2001)
Richard Lee MORRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-4286.
District Court of Appeal of Florida, First District.
May 29, 2001.
Rehearing Denied July 19, 2001.
*1033 Nancy Daniels, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellee.

EN BANC
ALLEN, J.
The appellant challenges a conviction entered upon a nolo plea reserving the right to appeal the denial of his motion to dismiss. The motion was filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), and with a contention that § 800.04(4), Fla. Stat. (1997), could not be applied to what the appellant described as a verbal interchange with the victim. Considering the appeal en banc in accordance with Florida Rule of Appellate Procedure 9.331(a), we conclude that the factual allegations are sufficient to bring the appellant's conduct within the statutory proscription against the commission of a lewd or lascivious act.
Section 800.04(4), Florida Statutes (1997), expressly pertains to one who knowingly commits "any lewd or lascivious act" in the presence of a child under the age of sixteen. The appellant was charged with violating this statute by telling a child that he desired to engage her in oral sex, using language which described this in a graphic manner. In his rule 3.190(c)(4) motion the appellant alleged that the child was visiting in his home and lying on his couch when he addressed her with the specified remarks expressing his sexual desire. The appellant further indicated that when the child expressed confusion the appellant explained his intent with specific language which was even more sexually graphic. Noting that he made no motion toward the child and did not hinder her when she got up and left, the appellant asserted that his conduct consisted merely of verbal statements within the privacy of his own home and that these undisputed facts do not establish a prima facie violation of § 800.04(4).
There is no dispute as to whether the language which the appellant used was lewd or lascivious. Instead, the appellant challenges the application of the statute to verbal conduct which is unaccompanied by other physical action. But the statutory reference to a prohibited "act" is commonly understood as encompassing conduct or behavior which involves only verbal statements or speech. See lA C.J.S. Act 1985. Indeed, this court is one of many which have recognized the concept of a verbal act in the context of a criminal proscription. E.g., L.J.M. v. State, 541 So.2d 1321 (Fla. 1st DCA), review denied, 549 So.2d 1014 *1034 (Fla.1989). There is no question but that the appellant understood that he was acting in a lewd or lascivious manner when he uttered his sexually offensive remarks to the child, and the appellant's motion to dismiss was properly denied as his conduct violated the statutory proscription against such a lewd or lascivious act.
The appealed order is affirmed.
BARFIELD, C.J., BOOTH, MINER, WOLF, KAHN, WEBSTER, DAVIS, VAN NORTWICK, LEWIS and POLSTON, JJ., CONCUR; BENTON, J., DISSENTS WITH OPINION IN WHICH BROWNING, J., CONCURS; PADOVANO, J., DISSENTS WITHOUT OPINION; BROWNING, J., DISSENTS WITH OPINION IN WHICH ERVIN, J., CONCURS.
BENTON, J., dissenting.
Did speaking in a lewd and lascivious manner in the presence of a child violate section 800.04(4), Florida Statutes (1997), which authorized fifteen years' imprisonment for anybody who "[k]nowingly commit[ted] any lewd or lascivious act in the presence of any child under the age of 16 years," § 800.04(4), Fla. Stat. (1997)? (Emphasis supplied.)

I.
The present case poses this artificially isolated question because counsel employed the procedure authorized in State v. Ashby, 245 So.2d 225 (Fla.1971), to frame the issue. See Brown v. State, 376 So.2d 382, 384 (Fla.1979); Lester v. State, 754 So.2d 746, 747 (Fla. 1st DCA 2000); Griffin v. State, 753 So.2d 676, 677-78 (Fla. 1st DCA 2000). "Where the parties stipulate that an issue is dispositive, we will not `"go behind" the stipulation of the parties in an effort to ascertain whether the issue is truly dispositive.' Phuagnong v. State, 714 So.2d 527, 528 (Fla. 1st DCA 1998)(quoting Zeigler v. State, 471 So.2d 172, 175 (Fla. 1st DCA 1985))." Mylock v. State, 750 So.2d 144, 146 (Fla. 1st DCA 2000).

II.
By construing section 800.04(4), Florida Statutes (1997), to outlaw lewd or lascivious speech, the majority opinion dishonors at least three canons of statutory construction, viz.: "One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature." Green v. State, 604 So.2d 471, 473 (Fla.1992). "[W]here criminal statutes are susceptible to differing constructions, they must be construed in favor of the accused." Thompson v. State, 695 So.2d 691, 693 (Fla.1997) (citing Scates v. State, 603 So.2d 504, 505 (Fla. 1992)). "Courts are inclined to adopt that reasonable interpretation of a statute which removes it farthest from constitutional infirmity." Tornillo v. Miami Herald Publ'g Co., 287 So.2d 78, 85 (Fla.1973), rev'd, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974) (concluding statute even so interpreted was constitutionally infirm on First Amendment grounds). Accordingly, I respectfully dissent.

A.
"[T]he power to create crimes and punishments in derogation of the common law inheres solely in the democratic processes of the legislative branch." Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991). In order that this power not be usurped by judges (however well meaning), the statutory language the Legislature employs when "creating crimes" must be given its plain and ordinary meaning.
Until today, section 800.04(4), Florida Statutes (1997), has been held to apply only to lewd or lascivious acts, not to salacious *1035 language. Our supreme court has said:
Under Florida criminal law the terms "lewd" and "lascivious" are synonymous: Both require an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others.
Schmitt v. State, 590 So.2d 404, 410 (Fla. 1991) (footnotes omitted and emphasis supplied). The supreme court's definitive gloss on "lewd or lascivious act" excludes speech.
This exclusion is in keeping with traditional English usage, which differentiates among thought, word, and deed, and distinguishes between "sticks and stones" and words. As commonly understood in the context of a penal statute, "`act' or `action' means a bodily movement whether voluntary or involuntary...." Black's Law Dictionary 24 (7th Ed.1999) (quoting Model Penal Code § 1.13). Section 800.04(4), Florida Statutes (1997), uses the word "act" not the phrase "verbal act."
Section 800.04(1)-(3), Florida Statutes (1997), proscribed not mere words, but perpetrating acts on, to, or with children, including vaginal penetration by the defendant's penis or its "union with the vagina of the minor victim," Harris v. State, 742 So.2d 835, 838 (Fla. 2d DCA 1999); Timot v. State, 738 So.2d 387, 390 (Fla. 4th DCA 1999), and digital, see Ready v. State, 636 So.2d 67, 68 (Fla. 2d DCA 1994), or lingual contact with a child's vagina. See State v. Stone, 677 So.2d 982, 983 (Fla. 5th DCA 1996). As Judge Browning points out, the stipulated facts might more logically support a charge of attempt under one of these provisions than the charge that was in fact brought.
What was charged here was a violation exclusively of section 800.04(4), Florida Statutes (1997), which we have construed to exclude anything specifically prohibited by some other statutory provision. See Burnett v. State, 737 So.2d 1106, 1107 (Fla. 1st DCA 1998). Exposing adult genitalia to a child has been held to violate section 800.04(4), Florida Statutes (1997). See Roberts v. State, 620 So.2d 1082, 1082 (Fla. 2d DCA 1993). Otherwise, the apparent function of former section 800.04(4) was to proscribe lewd or lascivious acts perpetrated on a third party in the presence of a child. See Simmons v. State, 722 So.2d 862, 862 (Fla. 5th DCA 1998); Buggs v. State, 693 So.2d 57, 59 (Fla. 5th DCA 1997); Brinson v. State, 574 So.2d 298, 299 (Fla. 5th DCA 1991). Nothing of the kind is alleged here.
Courts should not stretch a penal statute, even to cover clear evils lying outside the statute's scope, particularly if, as Judge Browning ably argues, other statutes are aimed at the same evils. See § 827.04(1), Fla. Stat. (1997) (making contributing to the delinquency of a child "by act, threat, command, or persuasion" a first degree misdemeanor). See generally Burnett v. State, 737 So.2d at 1107.

B.
"[O]ffenses defined by ... statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (1997). See State v. Huggins, 26 Fla. L. Weekly S174, S175, ___ So.2d ___, ___, 2001 WL 278107 (Fla. Mar. 22, 2001); Delgado v. State, 776 So.2d 233, 240 (Fla.2000). The Florida Supreme Court has applied this legislatively mandated rule of construction to the very language at issue in the present case, then codified as section 800.04(3), Florida Statutes (1987). See State v. Werner, 609 So.2d 585, 586 (Fla.1992) (construing "lewd or lascivious act in the presence of any child"). There "Werner told his wife that he had been masturbating while *1036 caring for the[ir infant] child." Id. Concluding his conviction should be reversed, the court said:
Applying the legal as well as the common-sense meaning of the word "presence" to section 800.04(3), leads us to the conclusion that, while the child need not be able to articulate or even comprehend what the offender is doing, the child must see or sense that a lewd or lascivious act is taking place for a violation to occur.
Even if we determined that the language of section 800.04(3) is ambiguous, the result would be the same. "[W]hen the language [of a criminal statute] is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla.Stat. (1987). Based upon this statutory rule of construction, any doubt as to the meaning of "presence" in section 800.04(3) would have to be resolved in Werner's favor.
Werner, 609 So.2d at 587. See also Villegas-Alen v. State, 25 Fla. L. Weekly D2636, D2637, ___ So.2d ___, ___, 2000 WL 1675864(Fla. 1st DCA Nov.9,2000) ("With regard to the application of a criminal statute, it is fundamental that a court must construe the statute strictly in favor of the accused.") "In order to uphold due process rights, penal statutes must be strictly construed according to their plain language. Perkins, 576 So.2d at 1312." State v. Watso, 788 So.2d 1026 (Fla. 2d DCA 2001). "Legislation defining crimes must therefore be read as strictly and as narrowly as reasonably possible...." Wallace v. State, 724 So.2d 1176, 1179 n. 5 (Fla.1998) (quoting Watts v. State, 440 So.2d 505, 511 (Fla. 1st DCA 1983)).

C.
"A statute being reasonably susceptible of two interpretations, by one of which it would be clearly constitutional, and by the other of which its constitutionality would be doubtful, the former construction should be adopted." In re Seven Barrels of Wine, 79 Fla. 1, 83 So. 627, 632 (Fla. 920). See also Industrial Fire & Cas. Co. v. Kwechin, 447 So.2d 1337, 1339 (Fla. 1983). Rather than construing the words "lewd or lascivious act" as outlawing speech and creating unprecedented questions about the permissible reach of the statutory languageDoes the majority opinion construe it to cover the recitation of lascivious limericks or the telling of lewd jokes a child can overhear?the court should follow the example the Fourth District set recently when faced with an analogous situation.
Construing a child abuse statute in State v. DuFresne, 782 So.2d 888, 891 (Fla. 4th DCA 2001) (emphasis supplied), the court said:
Florida's child abuse statute makes it a felony to commit an intentional act which could reasonably be expected to result in "mental injury" to a child. The trial court held the statute unconstitutional as being both overbroad and vague. We conclude that the statute is not facially invalid under the over-breadth doctrine, because it can be narrowly construed so that it does not apply to speech.

. . . .
If a statute which punishes protected speech can be narrowly construed so as to avoid its application to speech, the statute can withstand an overbreadth challenge.
. . . .
We conclude, as our supreme court did with the election laws involved in Doe [v. Mortham, 708 So.2d 929 (Fla.1998)], that this statute is not substantially overbroad and can be upheld against an overbreadth argument by narrowly construing it as not applicable to speech.

The Fourth District declined to construe a statute outlawing the "[i]ntentional infliction *1037 of physical or mental injury upon a child," § 827.03(1)(a), Fla. Stat. (Supp. 1996), to apply to speech.
But today's majority opinion rushes headlong in the other direction, even though the statute at issue here explicitly proscribes an "act," rather than the more nebulous "infliction of ... mental injury" at issue in DuFresne. As authority, the majority opinion cites L.J.M. v. State, 541 So.2d 1321 (Fla. 1st DCA 1989) (upholding a delinquency adjudication for disorderly conduct or breach of the peace predicated on fighting words). But upholding L.J.M.'s adjudication as a delinquent did not require construing the word "act" to include speech. Affirmance there did not rest on the view that L.J.M. had "commit[ted] such acts as are of a nature to corrupt the public morals." § 877.03, Fla. Stat. (1987).
Instead, the decision in L.J.M. depended explicitly on an antecedent, narrowing construction of the breach of the peace statute recognized as necessary to save the statute from unconstitutional overbreadth. See L.J.M., 541 So.2d at 1322 (citing State v. Saunders, 339 So.2d 641, 644 (Fla.1976)) (holding that, except for fighting words and words like shouts of "Fire!" in a crowded theater, the breach of the peace statute "should not be read to proscribe the use of language in any fashion whatsoever," because "nobody can be punished under a statute purporting to outlaw spoken words, if the statute would be unconstitutional as applied to anybody" (quoting Spears v. State, 337 So.2d 977, 980 (Fla. 1976))). Cf. Clanton v. State, 357 So.2d 455 (Fla. 2d DCA 1978). Today's decision effectively broadens the statute by judicial fiat to reach a brave new world of "lewd or lascivious" speech.

III.
The Legislature is not without power to outlaw behavior like appellant's. As Judge Browning contends, other subsections of the law in effect at the time may have done just that. The Legislature has, moreover, replaced section 800.04, Florida Statutes (1997), with a new statute that prohibits, among other things, "[s]olicit[ing] a person under 16 years of age to commit a lewd or lascivious act." Ch. 99-201, § 6, at 1188, Laws of Fla. (codified at § 800.04(6)(a)2., Fla. Stat. (1999)).
The constitution does not protect speech like appellant's against prosecution under a properly drawn statute. But the only question now before us is whether section 800.04(4), Florida Statutes (1997), applies on these facts. If construed in keeping with several decades' precedent and accepted canons of statutory construction alike, it does not.
BROWNING, J., dissenting.

EN BANC CONSIDERATION
I oppose, and I am dismayed by en banc consideration of this appeal. The number of prosecutions for verbal acts under section 800.04(4), Florida Statutes, and similar statutes of other states, the minuscule precedential effect of the majority opinion, comparison of this case with recent cases of exceptional importance that did not receive en banc treatment, the legislative changes to section 800.04(4) in 1999, and a review of authorities covering the exercise of en banc jurisdiction all persuade me that the instant appeal is one that should not be heard en banc under Fla. R.App. P. 9.331(a).
Fla. R.App. P. 9.331(a) provides two bases for en banc consideration: (1) when it is necessary to maintain uniformity in this court's decisions; and (2) when the case is one of exceptional importance. There exists no conflict between decisions of this court. This conclusion is undebatable, as section 800.04(4) has never been construed by this court to make a verbal act a crime. Thus, the basis for en banc consideration *1038 must be that the instant appeal is one of exceptional importance. However, this case does not come close to meeting this description under any logical analysis, and a review of the authorities that address "exceptional importance" under the rule reveals the majority's departure from precedent.
The rule was initially patterned in part after the en banc rule of the United States Court of Appeals for the Fifth and Eleventh Circuits. See Committee Note to Fla. R.App. P. 9.331. As originally adopted, the only ground for an en banc proceeding was "to maintain uniformity in the court's decisions." In re Rule 9.331, Florida Rules of Appellate Procedure, 374 So.2d 992, 993 (Fla.1979). The exceptional importance standard was added by the supreme court's amendment to the rule, effective January 1, 1985. The Florida Bar Re: Rules of Appellate Procedure, 463 So.2d 1114 (Fla.1984). The two expressed grounds for en banc consideration now provided in rule 9.331, also appear in Federal Rule of Appellate Procedure 35. The law is clear that if a state rule is designed after the language of its federal counterpart, the rule will take the same construction in Florida courts as its prototype has been given, insofar as such construction comports with the spirit and policy of the Florida law relating to the same subject. Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
The federal cases instruct that only the "truly extraordinary cases" merit en banc treatment, Boraas v. Village of Belle Terre, 476 F.2d 806, 829 (2d Cir.1973) (statement of Mansfield, J.). Such cases involve "issue[s] likely to affect many other cases"issues of real significance to the legal process as well as to the litigants. Walters v. Moore-McCormack Lines, Inc., 312 F.2d 893, 894 (2d Cir.1963) (statement of Lumbard, C.J.) (emphasis supplied). See also Gilliard v. Oswald, 557 F.2d 359 (2d Cir.1977) (statement of Kaufman, C.J.); United States v. Rosciano, 499 F.2d 173, 174 (7th Cir.1974) (en banc). Moreover, rule 35 may not be used "`merely' to correct individual injustices or mistakes." Galella v. Onassis, 487 F.2d 986, 1005 (dissenting opinion), quoting Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1021-1022 (2d Cir.1973) (dissenting opinion).
The Eleventh Circuit Court of Appeals' Rule of Operation 35-3 states in some detail the necessity for setting out the extraordinary nature of petitions for en banc consideration. The petition is one that is "intended to bring to the attention of the entire court a precedent-setting error of exceptional importance in an appeal or other proceeding." Moreover, "[a]lleged errors in a panel's determination of state law, or in the facts of the case ..., or error asserted in the panel's misapplication of correct precedent to the facts of the case ... [are not matters] for en banc consideration."
The facts of this case do not provide any basis for a determination of exceptional importance under the foregoing principles.
The strongest argument against a determination that this case is one of exceptional importance is the number of prosecutions, or lack of prosecutions, of a pure verbal act as a lewd and lascivious act under section 800.04(4) and under similar statutes in other states. Section 800.04 was enacted in 1943, and significantly, no prosecutions for pure verbal acts are reported under that section or under similar statutes in the other 49 states. The one reference to a prosecution found by my research involved a statute that specifically makes a verbal act a crime. See Commonwealth v. Coviello, 378 Mass. 530, 392 N.E.2d 1042 (1979). Thus, how can the majority plausibly argue that the instant case involving a pure verbal act has any *1039 unique significance? The answer is, it cannot, unless the majority reasons that its opinion will have a substantial precedential impact. However, any possibility of such impact was removed by the 1999 legislature when it amended section 800.04.
The legislature in 1999 amended section 800.04, and under amended section 800.04 a mere verbal act identical to the utterance of Appellant is not a crime unless the utterance is construed as a possible solicitation to a person under 16 years to commit a lewd or lascivious act. Section 800.04(6)(a)(2)(b), Florida Statutes (1999). Thus, we have an en banc decision deciding a case under a repealed statute that this court will never face again absent future legislative action, which cannot be reasonably anticipated in my judgment. In effect, the majority opinion will only constitute a statement that appellant's utterance is condemned and the legislature can legally reenact section 800.04(4). This is hardly a good reason for an en banc decision when the legislature has shown the wisdom to preclude prosecutions for speech not carefully defined by amending section 800.04.
Further, the importance of this case pales when compared with recent decisions of the court that clearly are recognized as ones of exceptional importance, but were not considered en banc. See Bush v. Holmes, 767 So.2d 668 (Fla. 1st DCA 2000) (reversing trial court judgment by determining opportunity scholarship program is facially constitutional); State v. North Florida Women's Health & Counseling Services, Inc., 26 Fla. L. Weekly D419, ___ So.2d ___, 2001 WL 111037 (1st DCA Feb. 9, 2001) (reversing trial court judgment by determining statutorily required parental notification before performing an abortion on a minor is constitutional). In my judgment, if these cases are not considered of exceptional importance, it is absurd to "label" the instant appeal as such, and the majority's action in doing so clearly departs from the criteria of Fla. R.App. P. 9.331(a).
In conclusion, I reason that the majority errs, and radically departs from the criteria required to invoke the en banc process. In all candor, in my judgment the criteria for en banc consideration under Fla. R.App. P. 9.331(a) have been misapplied for an amorphous criterion adopted by implication. I do not think the adoption of such a criterion will serve this court well for obvious reasons.

MERITS CONSIDERATION
In my judgment, the legislature can constitutionally proscribe words alone as a lewd and lascivious act if clearly stated. Mass. Gen. Laws. Ann. Ch. 272, § 53 (West 2000) (Massachusetts's statute prohibits lewd and lascivious speech and behavior). Indeed, it appears that the Florida Legislature, in 1999, amended section 800.04, Florida Statutes, by making it a felony of the second degree for a person 18 years of age or older to solicit a person under 16 years to commit a lewd or lascivious act. Section 800.04(6)(a)(2)(b), Florida Statutes (1999). My position is not that the legislature could not so provide; it is rather that until the 1999 amendments, it had not proscribed conduct involving only words under section 800.04, nor is there any indication in that statute reasonably suggesting that it has. Therefore, because the legislature's intent is not free from doubt, the defendant could not be convicted, based on the facts at hand, of the offense of committing a lewd and lascivious act.
As already mentioned in both the majority and dissenting opinions, this appeal arises from the defendant's conditional nolo plea following the denial of his motion to dismiss, filed pursuant to Florida Rule Criminal Procedure 3.190(c)(4), which permits *1040 the dismissal of an information if "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." During the arraignment, both the defense and the state stipulated that "the motion to dismiss is dispositive of the case." Thus, the parties have essentially agreed with the facts alleged in the motion, and because neither of the two opinions has described just what those facts are, I consider it necessary, for the reasons later stated, to publish in this opinion, the conduct leading up to appellant's conviction for committing a lewd and lascivious act, in violation of section 800.04(4), Florida Statutes (1997).
According to the parties' stipulated facts, the 11-year-old victim related that while she was visiting appellant's home, appellant came into the living room where she was watching television, and said twice to her, "I want to eat you." When she asked him what he meant by those words, he replied, "I want to eat your pussy." Immediately after the verbal exchange, the victim left the house. The motion explicitly recited that never at any time did the defendant make any motion toward the victim or take any action to impede her departure. Thus, under the majority's opinion, the defendant stands convicted of a second-degree felony offense based upon words alone.
The reason I do not believe the legislature had expressed an intention to punish such conduct under the 1997 statute is underscored by a comparison of the present facts with those in Smith v. State, 632 So.2d 644 (Fla. 1st DCA 1994), which approved a conviction for attempted handling, fondling, or assaulting a child under the age of 16, proscribed by section 800.04(1), Florida Statutes (Supp.1990), based on a verbal act which is almost identical to that uttered here. The only difference between the facts in Smith and those here is that in Smith, the defendant coupled his statement with movement in the direction of the victims. In Smith, this court held that the defendant's specific command to the minor victims to "give him [some] pussy," together with his act of following them in his van, evinced his intent to handle or fondle them. As a result, the defendant was convicted of attempted fondling, punishable as a third-degree felony.
This court appears now ready to say that a verbal statement alone, unaccompanied by any overt act, which would otherwise place it in the category of an attempted offense prohibited by subsection (1), and thereby subject the offender to punishment as a third-degree felon, is now made subject to punishment for a second-degree felony under subsection (4). It is inconceivable to me that the legislature intended, by reason of the creation of subsection (4), such a bizarre result. As Judge Benton has so forcefully said in dissent, section 800.04 is a penal statute that must be given a strict, rather than a broad, interpretation. If the legislature intended to proscribe as a lewd or lascivious offense verbal conduct solely, it could have specifically said so. Even if the provisions of the statute could conceivably be stretched to include only verbal statements, there is no indication that the legislature intended subsection (4) to be a "catchall" of all lewd conduct that may have previously been covered by earlier subsections. For example, the defendant could possibly be charged with the commission of an indecent assault in the presence of a child, prohibited under section 800.04(1). An assault is defined in section 784.011(1), Florida Statutes (1997), as, among other things: "[A]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in *1041 such person that violence is imminent." The facts alleged in the motion clearly suggest that the victim below had a well-founded fear that violence to her person may have been forthcoming, because immediately after the words were uttered to her, she left the defendant's house. Indeed, an essential element of any assault is the victim's well-founded fear of imminent violence. See Viveros v. State, 699 So.2d 822 (Fla. 4th DCA 1997). It may also be plausible to charge a defendant under section 800.04(3) with an act defined as sexual battery, without committing it, because the verbal statement made to the victim complies with the definition of sexual battery under section 794.011(1)(h).
Accordingly, the old statutory maxim, the expression of one thing implies the exclusion of the other, seems altogether applicable to the conduct charged in the present case. Nevertheless, whether the defendant in fact committed an assault or an attempt to commit sexual battery or fondling is immaterial because the defendant was not alleged to have violated either subsections (1) or (3), only subsection (4), and, for the reasons stated, I find it very difficult to believe that the legislature intended by its enactment of such nonspecific language to make verbal statements punishable as a second-degree felony.
In reaching my conclusion, I strongly question the applicability of case law authority interpreting the disorderly conduct statute (section 877.03, Florida Statutes, proscribing such offense as a second-degree misdemeanor), which Judge Allen has referred to in his opinion. The opinion cites 1A C.J.S. Act (1985) and L.J.M. v. State, 541 So.2d 1321 (Fla. 1st DCA 1989), for the position that what appellant said constituted a lewd and lascivious act. C.J.S. does state that the word "act," when used as a noun, "may take the form of a statement or speaking." 1A C.J.S. Act, at p. 287 (1985) (footnote omitted.) But the case cited in support of that proposition, Buhler v. Loftus, 53 Mont. 546, 165 P. 601 (1917), addresses whether a statement can constitute fraudulent misrepresentation. L.J.M. dealt with the offense of disorderly conduct, which is a second-degree misdemeanor. Case law authority involving disorderly conduct is, in my judgment, altogether distinguishable from the facts involved in this appeal. For example, cases interpreting that statute have approved the rule that words alone can constitute disorderly conduct. See Harbin v. State, 358 So.2d 856 (Fla. 1st DCA 1978). And see State v. Saunders, 339 So.2d 641 (Fla.1976) (limiting construction of disorderly conduct statute to allow conviction only for use of "fighting words" or words like "fire" shouted in a crowded theater).
In my judgment, if this court's en banc opinion proposes to affirm a conviction based on a violation of section 800.04(4), caused by a verbal statement, it should be prepared to cite Florida case law construing such subsection or case law from some jurisdiction having a statute similarly worded to that in subsection (4), rather than draw broadly upon cases interpreting different statutes, differently worded, which are designed to protect conduct different from lewd and lascivious acts.
It therefore seems unreasonable to me to conclude that the legislature intended to impose a greater penalty upon the utterance of words alone than upon the same conduct accompanied by overt physical acts, which would otherwise call for the imposition of an attempted offense and, consequently, a lesser penalty. Because I believe that the legislature has not proscribed such conduct, or if it has, it has done so exclusively under either subsections (1) or (3), I therefore conclude that the facts alleged do not constitute a criminal *1042 act under subsection (4). Accordingly, I would reverse appellant's conviction and remand to the trial court for further proceedings. Remand is the correct remedy rather than an unqualified reversal, because the parties stipulated if this court reversed appellant's conviction, appellee has the option to recharge appellant.
For these reasons I dissent.