HAZOURI, J.
Edward Munao was convicted of child abuse and solicitation to commit aggravated battery. He was sentenced to five years on each count, to be served consecutively. Munao appeals his child abuse conviction asserting that oral statements alone cannot support a conviction for child abuse under section 827.03(1)(b), Florida Statutes. Munao also appeals both convictions alleging that the state introduced several highly prejudicial pieces of evidence during trial that amounted to fundamental error. We reverse Munao’s child abuse conviction and affirm Munao’s conviction for solicitation to commit aggravated battery without discussion.
Munao has two children with former girlfriend, Jodi Walsh: N.M. and K.M. N.M. began having behavioral problems at the age of four, two years prior to the incident that is the subject of the charges against Munao. Walsh, the custodial parent, testified that N.M. would swear at her, kick her, pull her hair, throw objects at her and disobey her. N.M.’s outbursts became progressively more violent over time, precipitated by Walsh placing restrictions on his activities. During these outbursts, N.M. typically called Munao on the phone.
The allegations in this case stem primarily from two such telephone conversations between Munao and his son, N.M., age six, on November 17, 2003 and November 18, 2003. N.M. called Munao after an outburst on November 17, 2003. Walsh listened to the conversation from another phone in the house. Walsh testified that Munao told N.M. to “go to the kitchen and get a knife and kill me (Walsh).” Walsh tape recorded a subsequent conversation between herself and N.M., during which N.M. told Walsh that Munao told him to “go in the kitchen, get a knife and stab her.” The tape of this conversation between Walsh and N.M. was played for the jury.
N.M. had another outburst the following day, November 18, 2003. N.M. called Mu-nao again. Walsh taped this conversation, which was played for the jury. The conversation, in pertinent part, proceeded as follows:
MUNAO: — me to do?
N.M.: I want you to do something.
MUNAO: I told you again (indiscernible), what did I tell you to do? Go in the kitchen—
N.M.: No.
MUNAO: Well, what do you want me to do?
N.M.: Something.
MUNAO: Do you want me to kill her for you?
N.M.: No.
MUNAO: What do you want me to do?
N.M.: Get me out.
MUNAO: Then what?
N.M.: The bedroom.
MUNAO: If you want to stop her, we’ll have to stop her, [N.M.].
N.M.: Do something.
MUNAO: I told you, there’s one thing we can do.
*127 N.M.: No.
MUNAO: If you want me to do that, then we can do that.
N.M.: Do something then.
MUNAO: What?
N.M.: Something.
N.M.’s testimony at his videotaped deposition corroborated Walsh’s testimony. N.M. testified that Munao asked N.M. if he wanted him to come over and stab his mother with a knife. N.M. told his father no. N.M. said Munao asked him twice to go in the kitchen, get a knife and stab his mom. On November 19, 2003, Walsh went to the police about Munao’s statements to N.M.
Munao testified on his own behalf. He testified that when N.M. called him on the days in question, N.M. was “screaming bloody murder.” Munao was frightened that Walsh might try to harm N.M., so he told his son to go into the kitchen and get a knife. He said he did not intend for N.M. to actually get a knife and stab Walsh, or harm her. However, during a taped conversation between Munao and his new girlfriend that occurred while Munao was in jail, he remarked, “I was telling my son that repeatedly calls me four or five times a week screaming that his mom’s beating him to death and told him to go in the kitchen and get a knife and kill her, that’s what I told him to do because he was screaming his head off....” Further, Munao’s father testified that Munao told him that he told N.M. to get a knife and stab Walsh.
At trial, the state called Dr. Sheldon Rifkin, a clinical and forensic psychologist originally contacted by Walsh to assist with N.M. Dr. Rifkin diagnosed N.M. with Oppositional Defiant Disorder (ODD), a behavior disorder that displays defiance, disobedience and sometimes, swearing and physical aggression. Dr. Rifkin opined that Munao’s direction to N.M. to get a knife and kill Walsh was “completely inappropriate” and “extremely damaging” to a child with N.M.’s problems.
Dr. Gregory Landrum was retained by the state to evaluate N.M. and testify as an expert witness. Dr. Landrum diagnosed N.M. with ODD. He agreed that telling a child in N.M.’s condition to go into the kitchen, grab a knife and kill his mother, was reasonably likely to result in mental injury to the child. Further, Dr. Land-rum agreed that Munao’s statements could reasonably be expected to be the cause of substantial impairment in the ability of a child to function within the normal range of performance and behavior.
The jury found Munao guilty as charged of child abuse and solicitation to commit aggravated battery.
Munao argues first that his child abuse conviction must be vacated because oral statements alone cannot support a conviction for child abuse under section 827.03(1)(b), Florida Statutes. We agree.
Section 827.03(1)(b) defines “child abuse” as “[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child.” § 827.03(1)(b), Fla. Stat. (2003). Munao relies on State v. DuFresne, 782 So.2d 888 (Fla. 4th DCA), app’d, 826 So.2d 272 (Fla.2002). In DuFresne, this court addressed the constitutionality of section 827.03(1)(b), Florida Statutes. Id. at 890. The trial court in DuFresne held the statute unconstitutional on overbreadth and vagueness grounds. Id. The defendant argued that the statute was unconstitutionally over-broad because it applied to speech protected by the First Amendment and was unconstitutionally vague because “mental injury” was not defined. Id.
This court noted that section 827.03(1)(b) was being used to prosecute conduct protected by the First Amend *128 ment because some of the counts in the case were based solely on oral statements. Id. However, this court did not find the statute facially invalid. Id. Rather, this court upheld the statute against an over-breadth challenge by narrowly construing it as “not applicable to speech,” recognizing that:
The state’s interest in protecting children from physical abuse, which is the primary purpose behind the statute involved in this ease, is compelling. Any constitutionally protected conduct which could be prosecuted under this statute is insubstantial, compared to the other types of conduct to which the statute is directed.
Id. at 891.
On the vagueness claim, this court found that the absence of a definition for “mental injury” in section 827.03 could be cured by a definition in another statute. Id. at 894. This court certified the vagueness question to the Supreme Court of Florida, as a question of great public importance. Id. The Supreme Court of Florida approved the decision in DuFresne, but addressed only the vagueness argument. DuFresne v. State, 826 So.2d 272 (Fla.2002). The supreme court agreed that the vagueness issue could be cured by looking to other statutes for a definition of “mental injury.” Id. at 276-79.
The state acknowledges DuFresne’s holding as applicable to this case because Munao was convicted of child abuse based on his oral statements to his son. However, the state suggests that the supreme court’s opinion in DuFresne on the vagueness issue compels us to reevaluate its overbreadth holding to exclude only protected speech from the statute’s reach. There is no indication in the supreme court’s opinion that suggests or mandates a reevaluation of DuFresne’s overbreadth holding. In fact, the supreme court expressly recognized the overbreadth holding and declined to address it. DuFresne, 826 So.2d at 274. The supreme court had jurisdiction to review any other error properly raised in the district court, but chose not to do so. See Weiand v. State, 732 So.2d 1044, 1057 (Fla.1999) (citing Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 912 (Fla.1995)) (recognizing that when the Supreme Court of Florida has jurisdiction to answer a certified question, it also has jurisdiction to review other alleged errors raised in the appellate court). Accordingly, we decline to reconsider DuFresne’s overbreadth holding.
We acknowledge that Munao’s statements, encouraging his six-year old son to get a knife and stab his mother, are deeply troublesome and offensive. However, it is not this court’s role to rewrite the statute by interpreting it as the state suggests. Although section 827.03(1)(b) has withstood overbreadth and vagueness challenges, the problematic circumstances in this case invite the legislature to reconstruct the statutory language in a way that balances the strong interest in protecting children with the fundamental preservation of individual constitutional freedoms.
Munao’s statements to N.M. are unprotected speech, as they advocated the use of force and that advocacy was “directed to inciting or producing imminent lawless action and [was] likely to incite or produce such action.” See Brandenburg v. Ohio, 395 U.S. 444, 447-48, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (citing Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Yates v. United States, 354 U.S. 298, 320-24, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). Nevertheless, as presently constructed, section 827.03(l)(b) cannot be applied to speech of any kind. This court’s narrowing construction of the statute in DuFresne was necessary to *129 avoid overbreadth because the statute does not limit its application to any recognized exception to the First Amendment. “When legislation is drafted so that it may be applied to conduct that is protected by the First Amendment, it is said to be unconstitutionally overbroad.” DuFresne, 782 So.2d at 890.
Section 827.03(1)(b) prohibits “[a]n intentional act ... ” which is seemingly an attempt to outlaw the act that inflicts the harm, not the actual harm itself. However, the statute contains no parameters or guidelines as to what constitutes an act under the statute. Therefore, in reference to speech which constitutes an intentional act or conduct, any statements by a parent or teacher directed towards a child which could cause mental injury would be subject to prosecution as child abuse. The only clarification offered by the legislature is a definition of the term “mental injury” in another statute, specifically describing the result in a child that is necessary to invoke the statute. Thus, it appears that the child abuse statute actually outlaws a result derived from any act, making the statute applicable to a wide range of acts that cause a “physical or mental injury upon a child.” § 827.03(1)(b), Fla. Stat. (2003). If the legislature specifically defined the applicable act or conduct, then the statute could be interpreted as targeting specific conduct, not any conduct which causes the defined result. Thus, the conduct itself would be unlawful, whether achieved by spoken words or physical actions.
We reverse and remand and direct the trial court to enter a judgment of acquittal for the child abuse charge. Munao’s other issues on appeal concerning prejudicial evidence were not preserved and do not represent fundamental error. Accordingly, we affirm Munao’s conviction for solicitation to commit aggravated battery.

Affirmed in Part, Reversed in Part, and Remanded with Directions.

GUNTHER and MAY, JJ., concur.